No. 14,131.

MRS. M. D. C. CANE VS. E. B. HERNDON.

## SYLLABUS.

1. Under article 210 of the constitution of 1879, and act 85 of 1888, it was not obligatory upon the tax collector to recite in his tax deed the fact that, before offering the property as a whole, he had offered the least quantity that any bidder would buy for the taxes, interest and costs due thereon, and, if it be a fact that such previous offering was made, the tax purchaser should be permitted to prove it by evidence *aliunde* unless to do so would be to contradict the positive recitals of the deed.

2. Where the tax deed, in such case, is susceptible of interpretation, the presumption established by the constitution in favor of its *prima facie* validity extends to the meaning of the language used, and it will be presumed, *prima facie*, that, of two possible meanings, that meaning was intended agreeably to which the deed may be valid rather than that which must render it void.

3. Where two or more vacant lots, of the same size and value, in a city or town, are assessed together, for a lump sum, the constitutional requirement, as to offering the "least quantity," may be complied with, either by offering one of the lots or by asking bidders to compete by stating and designating the least quantity that they may be willing to buy for the taxes, interest and costs due on the whole.

4. The failure of the collector to offer the least quantity before selling the whole property affects the title with a vice for which it may be annulled in an action brought within the legal delay, but which is not so radical as to protect the owner against the prescription denounced by section 66 of act 85 of 1888, or section 5 of act 105 of 1874.

APPEAL from the First Judicial District, Parish of Caddo— Land, J.

*David Thompson Land* and *Henry Hunsicker*, for Plaintiff, Appellant.

*Alexander & Wilkinson*, for Defendant, Appellee.

The opinion of the court was delivered by

MONROE, J. Plaintiff alleges that she owns lots 14 and 15, in square No. 54, in the city of Shreveport; that the defendant is in possession thereof, claiming under a tax title, and that said title is void for the reasons, that the deed from the tax collector shows upon its face: (1) That the least quantity of the property which any bidder

would buy was not offered, but that the whole was sold in block, and (2) that said property was not sold for the amount of the taxes, interest and costs. It is also alleged that the defendant is a possessor in bad faith, and there is a prayer for judgment, decreeing his title void, and condemning him for rents and revenues, etc. The defendant pleads the prescription of one, two, five and ten years, affirms the validity of his title and alleges that he has been in open, peaceable, and uninterrupted possession thereunder, since January 11, 1889. He further alleges that, in December, 1886, the said property was offered for sale by the sheriff under a judgment and writ of *fieri facias* against the plaintiff for over $40,000 and was adjudicated to him for $550, and that said amount was then and there paid by him and credited on said judgment, and that plaintiff is estopped to assert the claim here set up by reason of the fact that she received the benefit of said payment and of the further fact that she has stood by for twelve years, or more, without asserting said claim, during which time large judgments standing against her have become prescribed, and respondent has been in possession of, and has paid the taxes on, the property in question. He prays that the demand be rejected, but that, in the event of his eviction, he be granted judgment for said $550, and for the taxes disbursed by him, with interest, etc.

The evidence fails to show that the defendant acquired any title by virtue of the adjudication of the sheriff on December 4th, 1886, as it is admitted that there was no *process verbal* of adjudication, and no deed by the sheriff. It also fails to show that the amount paid by the defendant was credited on any judgment or *fi. fa.* against the plaintiff, that it enured to her benefit, or that she was ever made aware that the property in question had been adjudicated to the defendant. The defendant and the, then, sheriff (who has been out of office for several years) testified orally (over the objection of the plaintiff's counsel) to the fact of the adjudication and to the amount. The defendant testified that he had subsequently paid said amount to the minors, plaintiffs in the writ, through their tutor, and the account furnished by the tutors to his wards was introduced (also over the objection of plaintiff's counsel) for the purpose of showing that the tutor had charged himself with said sum. We agree with the judge *a quo* that the oral testimony was admissible as showing that the defendant had bid a certain amount for the lots in question and that he had paid said amount to the tutor, but we do not think that the account furnished by

the tutor, who was not put on the stand, was admissible as against the plaintiff, who was not a party thereto and was afforded no opportunity to cross-examine its author. We, therefore, dismiss the matter of the sheriff's sale, of December 4th, 1886, and proceed to the consideration of the tax deed of January 11th, 1889.

Article 210 of the Constitution of 1879 reads, in part, as follows:

"The collector shall, without suit, and after giving notice to the delinquent in the manner to be provided by law (which shall not be by publication—except in the cases of unknown owner) advertise for sale the property on which the taxes are due in the manner provided for judicial sales, and, on the day of sale, he shall sell such portion of the property as the debtor shall point out, and, in case the debtor shall not point out sufficient property, the collector shall, at once and without further delay, sell the least quantity of property which any bidder will buy for the amount of the taxes, interest and costs. * * * All deeds of sale made, or that shall be made, by collectors of taxes shall be received in evidence by the courts as *prima facie* valid sales."

The act of 1888, No. 85, under the authority of which the sale in question was made (section 63) provides: "That each state tax collector * * * shall execute and sign, in person or by deputy, in the name of the State of Louisiana, a deed of sale to the purchaser of any real estate sold for taxes, in which he shall relate, in substance, a brief history of the proceedings had; shall describe the property, state the amount of the taxes, interest and costs, and the bid made for said property, and the payment made to him in cash, and shall sell said property to the purchaser with the right to be placed in actual possession thereof," etc. The deed under which the defendant claims reads:

"State of Louisiana, Parish of Caddo.

"Be it known that this day, before me * * * came and appeared John Lake * * * collector of state and parish taxes for said parish, acting herein under and by virtue of the authority vested in him by the constitution and laws * * * and in the name of the state of Louisiana, who declares that he does, by these presents, sell, convey and deliver unto E. B. Herndon the following described property assessed to M. D. C. Cane upon the tableau of taxes in and for said parish of Caddo for the year 1888, to-wit: Lots 14 and 15 in block 54, city of Shreveport. The said property was advertised in the Shreveport Democrat, a newspaper published in said

parish, from the 29th day of April to the first day of June, 1899, making full thirty clear days from the date of the first insertion to the day of sale, announcing said sale to take place at the front door of the civil district court house of said parish within the legal hours of sale on the 1st day of June, 1889. When on said sale day, between said legal hours of sale, and at said court house door, after first having read the advertisement announcing the amount of taxes, interest and costs due on said property for the year 1888 proceeded to offer the said described property for sale, for cash, without appraisement, in legal tender money of the United States, to pay and satisfy said taxes, interest and costs, when, at said offering, the said E. B. Herndon having bid the sum of nineteen and 95-100 dollars for said property became the purchaser thereof at that price, subject to redemption, as provided by law. This sale is made for the consideration of the sum of nineteen and 95-100 dollars, cash in hand paid, the receipt of which is hereby acknowledged. The said sum being for taxes $14.70, interest $———, advertising $——— and costs $5.25, making said sum of nineteen and 95-100 dollars." This act bears date, June 11th, 1889, and was recorded on the same day. It is not suggested that there was any defect in the assessment or that the plaintiff did not receive notice of the intended sale. The allegations are, that the tax deed shows on its face that the requirements of the constitution were not complied with, in that it shows that the property was offered in block, without there having first been offered the least quantity that any bidder would buy for the amount of the taxes, interest and costs; and that it also shows that it was not sold for the amount of the taxes, interest and costs.

The ground of attack last mentioned is predicated upon the idea that the recital in the deed; "the said sum being for taxes $14.70, interest $———, advertising $——— and costs $5.25, making said sum of $19.95," is to be construed as meaning that the collector sold the property for $14.70 of taxes, and $5.25 of costs, and that he received nothing in the way of interest. We do not so interpret the language used. Neither the constitution nor the statute require that the different items of taxes, interest and costs be specified in the deed, and, whilst the collector has specified the amount of the tax, separately, we understand him to have aggregated the items of advertising, interest and costs in one amount. This becomes obvious if the blanks which are left in the deed, as prepared, but which were not filled, be omitted, thus—"the said sum being for taxes $14.70, interest, advertising and costs $5.25,

making said sum of $19.95." No attempt was made, though the ex-collector was on the stand as a witness, to show that the amount for which the property was sold did not include all taxes, interest, and costs due, and we have no reason to assume that the collector failed to discharge his duty in that respect.

Considering the remaining grounds of attack relied on by plaintiff, in connection with the plea of prescription which has been interposed, the questions suggested are: (1) Does it appear, affirmatively, from the recitals of the tax deed, that the collector offered the property in block without having previously offered the least quantity that any bidder would buy for the amount of the taxes, interest and costs; (2) is it competent to show by proof *aliunde quam* the deed, that such previous offering was made; (3) if it be held that such proof cannot be received, or, being received, that it fails of its purpose, and that, as a matter of fact, the collector offered the property in no other manner than in block, is the resulting defeat in the title of such a character as to deprive the holder of the benefit of the prescription on which he relies?

The judge of the district court reached the conclusion that the deed does not show upon its face that the collector failed, before selling the property in block, to make the effort required by the constitution to sell the least portion that any bidder would buy for the amount of the taxes, etc.; and that it was competent for the defendant to prove, by oral testimony, that such effort was made without success; and that even though the collector had failed to offer the property otherwise than in block the resulting defect would not be so radical as to place the title beyond the protection of the prescription invoked. From his very able opinion we make the following excerpts:

"Act 85 of 1888, in section 63, provides, that the tax collector, in his deed, " Shall relate, in substance, a brief history of the proceedings had, shall describe the property, state the amount of the taxes, interest and costs and the bid made for said property and the payment made to him, in cash, and shall sell said property to the purchaser," etc. Sec. 66, of the same act, provides, "All actions to annul tax sales for any irregularities or informalities of whatever nature shall be prescribed by two years from the day the tax collector's deed is recorded." This act requires certain specific recitals in the tax deed, but as to all other formalities "a brief history of the proceedings." Does the failure to mention in the "brief history of the proceedings" any one of the

various proceedings required of the tax collector by the revenue law of the state render his deed *absolutely null and void on its face?* This question is answered by article 210 of the constitution of 1879, in the provision making all tax deeds *prima facie* evidence of valid sales."

\*        \*        \*        \*        \*        \*        \*        \*        \*

"Assuming that the tax deed shows a sale in block and that evidence is not admissible to show that the tax collector first offered the least quantity that any purchaser would buy, the question arises as to the nature of such defect or irregularity in the proceedings. Is it a nullity or defect that is so absolute and radical that it cannot be cured by any of the prescriptions pleaded? That such a defect is a ground of nullity is conceded, and is shown by the following adjudged cases, viz: Norris vs. Hayes, 44 Ann. 907; Land and Improvement Co. vs. Succession of Fasnacht, 47 Ann. 1294; Bristol vs. Murff, 49 Ann. 357. These were suits to annul tax sales. Prescription was not pleaded, and the nature of the nullity, whether relative or absolute, was not discussed. The question is therefore *res nova* in our jurisprudence." Our learned brother then proceeds to cite authority to the effect that "the validity of tax sales is to be tested under the same principles as judicial sales;" that "irregularities and defects, growing out of any judicial sale, which may be cured by monition, include any informality in the order, decree, or judgment of the court under which the sale was made, or any irregularity in the appraisement, or advertisement, in time or manner of sale, or any other defect whatsoever," save want of citation, and that such irregularities and defects in tax sales are cured by monition or prescription, and to the further effect that, notwithstanding the jurisprudence, which he recognizes, holding that the prescription of three and five years does not apply to cases in which there is want of notice, radical defect in the assessment, or no law authorizing the sale, it has not been held, since the decision in Barrow vs. Wilson, that such prescription does not bar an action to annul a tax sale "on account of informalities, irregularities, or illegalities, *"connected with the sale."* And he concludes that the present action is therefore barred by the prescription of three and five years.

It is certainly true that neither the constitution of 1879 nor the statute under which the sale in question was made, required, as a condition precedent to the validity of the title resulting from such sale, that the deed should specifically recite that, before offering the property in block, the collector had offered the least quantity that any bidder

would buy for the taxes, interest and costs. If, therefore, as a matter
of fact, the collector first offered the least quantity, the only thing of
which the plaintiff could complain would be, that in relating "in
substance, a brief history of the proceedings" he had omitted to
mention such offer, and the complaint would be entitled to no consid-
eration for the double reason that such mention is not required and
that its omission could work no injury. The plaintiff, however, com--
plains that as a matter of fact, the least quantity was not offered, and
it is said that the recital in the deed is conclusive to that effect and
cannot be contradicted by the oral testimony of the defendant, or of the
collector, whose term of office has expired. The recital in question
reads: "When, on said sale day  *  *  *  after first having read
"the advertisement, announcing the amount of the taxes, interest and
costs due on said property for the year 1888, proceeded to offer said
described property for sale, for cash, without appraisement  *  *  *
when, at said offering, the said E. B. Herndon, having bid the sum of
$19.95  *  *  *  became the purchaser," etc.

It is true that there is no affirmative statement in this recital to the
effect that the least quantity of the property that any bidder would buy
for the taxes, interest and costs, has been offered, before the offer of
the whole. And it is equally true that there is no statement that the
debtor had failed to point out the property to be seized, though it is
only in that event, by the express terms of the constitution, that the
collector is authorized and required to sell "the least quantity," etc.
Upon the other hand, the statement, as made, and the fact, the non-
existence of which the plaintiff alleges, and the existence of which the
defendant asserts and offers to prove, that the whole property was
offered only after the offering of such least quantity, may very well
stand together, so that the effect of the testimony to which the plaintiff
objects is not to contradict the recitals of the deed, but merely to show
that the collector took certain steps, which were required to be taken,
but which do not appear, and which are not required to appear, from
those recitals. It is to be remembered in this connection, that, besides
those provisions of article 210 of the Constitution of 1879, upon which
the plaintiff relies there is the further provision, that "All deeds of
sale made, or that may be made by collectors of taxes shall be received
in evidence by the courts as *prima facie* valid sales."

The *prima facie* presumption, therefore, in the case of a tax sale
which is open to construction, is, that the meaning intended by the

language used is such as would give effect to the deed rather than render it void upon its face. And it is for the attacking party to show that such a construction is inadmissible, or is unsupported by fact. This has not been done in the instant case, but, on the contrary, the testimony which was objected to was offered by the defendant in support of, and sustains, a construction of his deed, of which it is fairly susceptible, and which gives validity to his title. And we are of opinion that the testimony was properly admitted. Nor do we think that this view conflicts with the ruling in Norris vs. Hayes, 44 Ann. 912, and Bristol vs. Murff, 49th Ann. 357, since, in neither of those cases was there any attempt to show that the collector offered the "least quantity," etc., before offering the whole property, and it may be assumed that the recitals in the deeds then before the court, though similar to those upon which the present defendant relies, were intended to mean, and, for that reason, were accepted as meaning, that no preliminary offer of the least quantity of property was made. It does not follow, however, that those recitals were susceptible of no other interpretation, or that such meaning would have been attributed to them if it had been shown that it did not accord with the fact. There is some difference between the testimony of the defendant and that of the ex-collector as to the manner in which the offer of the least quantity of the property in question was made; the defendant testifying that one of the two lots was offered, and the collector, that the offer was made in his "usual manner," which was, to ask "what is the least amount of this property that any, bidder will take and pay the taxes thereon?" (Including interest and costs.) If there was an offer to take less than the whole, he would then ask, "What specified part?" If, on the other hand there was no offer to take less than the whole, he would ask "Who will take the whole of this property and pay the taxes, etc?" And the sale would be made to the bidder who would be willing to pay the amount due in consideration of the adjudication to him of the least portion of the property, or of the whole, as the case might be. We are of opinion that, for the purposes of this case, in which there were two vacant lots, of the same size and value, assessed together, for a lump sum, either method of offering would have fulfilled the requirements of the law, the object of which was, and is, to prevent the sale, unnecessarily, of a number of town lots, or of a large tract, or tracts, of land in the country, the taxes upon which might be realized, in the one case, by the sale of one, the least valuable, lot, and in the other, by the sale of an inconsiderable portion of the land.

Beyond all this, however, is the question: if the collector fails to offer "the least quantity of the property," before offering and selling the whole, is the resulting defect in the title of such a character as to deprive the tax purchaser of the benefit of the prescription which is here relied on?

Article 3543 of the Code provides that "All informalities connected with, or growing out of, any public sale, made by any person authorized to sell at public auction, shall be prescribed against by those claiming under such sale after the lapse of five years from the time of making it, whether against minors, married women, or interdicted persons."

Section 5 of act 105 of 1874 reads, "Any action to invalidate the titles to any property purchased at tax sales under and by virtue of any law of this state shall be prescribed by the lapse of three years from the date of such sale."

The concluding paragraph of section 66 of act 85 of 1888, being the statute under the authority of which the property in question was sold, declares that "all actions to annul tax sales for any irregularity or informalities of whatever nature shall be prescribed by two years from the day the tax collector's deed is recorded."

The last section of this statute repeals "All those parts of laws, on the subject of levy, assessment and collation of state taxes, heretofore enacted, which are in conflict with the constitution of the state, or are inconsistent with, or superseded by, or contrary to, or in conflict with," its own provisions.

The prescription of five years, established by the Code (from the date of the sale) against "informalities" in any public sale, are clearly inconsistent, as to the matter of time, with the prescription of two years (from the recording of the deed) against "irregularities or informalities" in "tax sales" established by the act of 1888 and, we may, therefore, leave the article of the Code out of the question in this case.

The acts of 1874 and of 1888 may stand together, by holding that the latter applies merely to "irregularities and informalities" in tax titles, whilst the former is still in force as establishing the prescription of three years against more serious defects. In Person vs. O'Neal, 32 Ann. 327, and Lague vs. Boagni, *Ib*. 912, it had been held, before the adoption of the act of 1888, that the prescription of three years, under the act of 1874, was inapplicable, in the one case, where property had been sold for taxes without notice to the owner, and, in the other

where the property had been assessed in the name of a person, not the owner, whilst the title of the owner was spread on the public records, the purchasers were shown to have been aware of the defects, and it did not appear that they were in possession. These cases were reviewed in Barrow vs. Wilson, 39th Ann. 403, and the case of Person vs. O'Neal was overruled, whilst the case of Lague vs. Boagni was differentiated and practically sustained. It was also held that neither the prescription of three nor five years applied to the right of action of a minor to annul a tax sale. In Breaux vs. Negrotto, 43 Ann. 441, the court, in part, overruled Barrow vs. Wilson and returned to the doctrine, announced in the case of Person vs. O'Neal, that "whatever defects in a tax sale may be cured by the lapse of three years, the want of personal "notice to the owner, or his agent or curator, cannot be, because such notice is a condition precedent to the seizure, without which there could be no sale," and this doctrine has since been repeatedly affirmed. But the court has gone no further, nor do we find any sufficient reason for doing so at this time. A law authorizing an assessment and sale of property for taxes, an assessment under the authority of, and as required by, such law, and the notice to the owner, as required by the constitution, of the intention to sell, were regarded, as conditions precedent, without the existence or observance of which it was considered that a proceeding leading to the sale of property for taxes was of no binding force or effect and the title resulting therefrom, in contemplation of law, no title at all, and, hence, incapable of being validated by prescription. If, however, property is legally assessed, and the owner receives notice of the intention of the collector to sell it for the taxes due, it may reasonably be presumed that he will avail himself of the opportunity thus offered to protect his rights by insisting that all the conditions, as to the manner of the sale, and especially those which are imposed for his benefit, shall be strictly observed. If he stands by and allows the property to be sold in disregard of such conditions there can be no reason, unless it be that the state is without power in the premises, why the prescription established by law should not protect the purchaser in his title. As to the policy of such legislation and the power of the state, all writers and jurists are agreed. "The policy of such laws is unquestionable, and the power to enact them is undisputed." Cooley on Taxation, 376. "Public policy demands the enactment of such laws and they are universally sanctioned by the practice of nations and the consent of

mankind." Blackwell on Tax Titles, 643. Prescription is a thing of policy, growing out of the experience of its necessity; and the time after which suits or actions shall be barred, has been, from a remote antiquity, fixed by every nation, in virtue of that sovereignty by which it exercises its legislation over all persons and property within its jurisdiction." McElmoyle vs. Cohen, 13 Peters, 312.

Whatever merit, therefore, there might be in the position of the plaintiff's counsel, and it has certainly been most strongly presented, that the deed under which defendant holds is not subject to interpretation, or explanation, we should still be obliged to hold against his client on the subject of prescription. Conceding that a tax sale may be annulled, in an action brought within the time prescribed by law, because of the non-observance of the legal requirements as to the offering of less, before selling the whole, property, it nevertheless remains that such action may be barred by prescription. The only question to be determined being, whether the law was intended to apply to it. For reasons which were considered sufficient, it has been held that the prescription established by the law of this state was inapplicable in certain cases, where to have held otherwise would have been, in effect, to have deprived the owners of their property under circumstances which it was not believed were within the contemplation of those laws. But the policy of the state has been more emphatically declared in the present constitution, and in the statute adopted pursuant thereto, and, whilst this recently enacted law does not control in the case now before us it does not, upon the other hand, encourage the courts to go farther than they have done, on behalf of the tax payer, in the matter of construing the statutes of prescription.

Judgment affirmed.

Rehearing refused.