BLANCHARD, J.
Piaintiff claims the ownership of two lots of ground in square No. 362 in the city of New Orleans, which square is bounded by St. Claude, Clouet, Louisa and Rampart streets, and brings this suit to vindicate her title.
While her action is petitory in character, in reality and in effect it is an attack upon a tax title under which defendant holds the property and has held it as owner for more than 10 years before this proceeding was begun.
The lots have a frontage of a fraction more than 30 feet each on St. Claude street by a depth back towards Rampart street of a fraction more than 198 feet between parallel lines.
Plaintiff describes the property as lots “A” and “B” on a plan drawn by Arthur De Armas, civil engineer, in September, 1870, which is stated to have been deposited in the office of Selim Magner, late notary public in the city of New Orleans, as plan No. 133 of the Book of Plans No. 3.
It was by this description she acquired the lots by public act in June, 1877. Her acquisition was by dation en paiement made to her by her husband, Henry Muller, in part satisfaction of a judgment she had recovered against him for separation of property and for paraphernal funds. Henry Muller had acquired the lots in 1870 by purchase from J. B. Plauché, Jr.
Defendant claims to have acquired the property by act of purchase from her father, W. H. Wilder, in November, 1889; that her father acquired the same by purchase from Frederick Kuhn in June, 1888; and that Kuhn acquired it by purchase from the state of .Louisiana, through Charles Cavanac, tax collector, in July, 1886, at which time the adjudication at public tax sale was made to him, though the notarial act by the tax collector was not executed until August, 1887.
In all the title deeds under and through which defendant claims the property the same is described as lots 24 and 25 in square No. 302, measuring, together, 61 feet front on St. Claude street, by a depth of 198 feet.
This numbering of the lots corresponds with a map or plat made of square No. 362 by W. H. Bell, city engineer, and this subdivision of the square by Bell is the one adopted by the tax assessors for many years, and now, in listing and describing the property situated in square 362 on the assessment rolls for purposes of state and city taxation.
That lots “A” and “B” on the plat made by Surveyor De Armas are identical with lots 24 and 25 on the plat made by City Surveyor Bell is manifest.
Though Mrs. Muller, the plaintiff, had never acquired any property fronting on St. Claude street in square 362 except the lots described in the dation en paiement from her husband to herself as “A” and “B,” from the time of her acquisition in 1877 until the tax sale to Kuhn the lots• she owned in the square fronting on St. Claude street were assessed to her as lots 24 and 25.
Thus, from and inclusive of 1878 to 1881 lots 24 and 25 in square 362, fronting 61 feet on St. Claude street by' a depth of 198 feet, were assessed on the state assessment rolls to her as “Mrs. Henry Muller.” tier husband having died in the early part of 1882, the assessment of the lots by the numbers 24 and 25 aforesaid was made to her as “Widow Henry Muller” for the years from 1882 to 1887. In 1888 the lots were assessed to Frederick Kuhn; in 1889 to W. H. Wilder; and from and inclusive of 1890 down to the present time, to the defendant, Mrs. Mazerat —all by the numbers 24 and 25 with the frontage mentioned above on St. Claude street.
It does not appear that Mrs. Muller ever paid a cent of taxes on the property at any time, whether as lots “A” and “B,” or lots 24 and 25. It does not appear that the lots ever appeared on any assessment roll as lots “A” and “B.”
Indeed, a city tax research certificate obtained from the comptroller of the city and filed in evidence shows that as early as the year 1870 the property was assessed for city taxes as lots 24 and 25, with a frontage of 61 feet by a -depth of 198, in the name of “Widow J. B. Plauché”; in 1871, 1873, 1874 and 1875 in the name of “H. Muller”; and in 1876, 1877 and 1878 in the name of “Hendrick Muller.” Thereafter (the latter’s wife having acquired it) it was assessed on the city rolls until and inclusive of 1882 *119 in the name of “Mrs. Hy. Muller,” and after that to and inclusive of the year 1887 in the name of “Widow Hy. Muller.”
When, therefore, J. B. Plauché, Jr., sold to Heury Muller in 1870 and the latter to his wife in 1877, the property was borne on the city rolls as lots 24 and 25.
In view of its assessment continuously for years under that description it cannot be claimed with reason that any of the then owners were misled by such description. It identified the property. The numbers 24 and 25 in square 362 were evidently a more public and better known designation of the property than the letters “A” and “B.”
The official plan of the square made by City Surveyor Bell, indicating the lots in the square by numbers, was preferred to the nonofficial plan made by De Armas, survey- or, designating them by letters.
In law that description of property on the assessment rolls which identifies it, and does not mislead the owner, suffices.
We must hold, therefore, that when in 1886 the tax collector sold the. property in controversy for the taxes of 1S78 assessed against the plaintiff under the designation as lots 24 and 25, square 3G2, the description was legally sufficient to identify it, though in the act of conveyance to her the year previous it had been described as lots “A” and “B.” In re Wenck, 52 La. Ann. 376, 26 South. 989; Clifford v. Michiner, 49 La. Ann. 1511, 22 South. 811.
It remains to be seen whether that sale otherwise sufficed to devest plaintiff of her title and invest the same in Kuhn, the tax adjudicatee, and in Wilder, his transferee.
The tax deed makes prima facie proof of compliance with all legal requirements. There is nothing in the record to rehut this.
But ^plaintiff contends that the title conveyed to Kuhn was and is void because Kuhn did not immediately pay the taxes due on the property, at the time of his purchase, for the year 1880 and subsequent years, up to the date of his purchase.
Kuhn purchased in July, 1886, but the tax collector does not seem to have gotten ready to make him a formal title until August of the following year, when, as was usual in all tax titles of that period of the character of the one in question, it was recited that the purchaser, paying in cash the tax for the year for which the property'was sold, assumed payment of the taxes due upon it for the year 1880 and subsequent years.
It appears that Kuhn, not desiring to pay out so much money in taxes on the property, bargained with W. H. Wilder to take it off his hands. Wilder consented, and having ascertained the amount of taxes due the state and the city paid the same on June 19 and 21, 1888, and on the latter date took formal title from Kuhn to the property.
The record contains tax receipts, all dated June 19, 188S, showing payment by Wilder for each of the years from 1880 to 1887, both inclusive, of state taxes on assessments made of the property in the name of the plaintiff, and contains also tax receipts, all dated June 21, 1888, showing pajunent by him, for each of the said years, of city taxes on assessments of the property in her name.
Following Kuhn’s purchase at the tax sale, the tax debtor took no steps to redeem the property, nor to pay the antecedent taxes the purchaser had assumed. So that there had been no change in the situation from the time of Kuhn’s purchase down to the time when Wilder paid the assumed taxes and took title from Kuhn.
Did the delay, under the circumstances, vitiate the tax collector’s title to Kuhn and the conveyance by the latter of that title to Wilder?
We hold not. A purchaser at a tax sale under Act No. 82 of 1884, or any assignee or vendee under him, may pay the taxes accruing subsequent to December 31, 1879, and thereby perfect his title, and he may do this until cut off from so doing by action of the state, the former owner, or some other person in interest. West v. Negrotto, 48 La. Ann. 922, 19 South. 819; Id., 52 La. Ann. 381, 27 South. 75; Castello v. McConnico, 47 La. Ann. 1473, 1474, 17 South. 868.
This is common sense as well as law, and meets the intention of the lawmaker, which was to realize to the state and her political subdivisions the taxes delinquent on the property proceeded against. In this instance, the effect has been to take the property, as the law intended should be the case, out- of the hands of an incorrigible delinquent tax debtor and transfer it to others who paid all the taxes back of the date of their purchase and all that have accrued since.
*121 Plaintiff’s further contention is that the sale to Kuhn was void because the tax collector did not offer the least portion of the property that any purchaser would buy for the taxes and costs due thereon.
There is no proof that this was not done, and, as we have seen, the title conveyed to Kuhn must be held prima facie valid. Bank v. David, 49 La. Ann. 142, 21 South. 174; State v. Hertzog, 41 La. Ann. 766, 6 South. 622.
But were there such proof in the record, it would not avail plaintiff. The failure to offer the least quantity before selling the whole property is not so radical a vice as to protect the owner against the prescription of three years announced in the fifth section of Act No. 105 of the Acts of 1874. Cane v. Herndon, 107 La. 591, 32 South. 33.
This prescription is pleaded, as well as that of 10 years. Both are good.
Defendant and her father, who sold to her, came into the actual possession of the property. This possession was for more than 10 years before this suit was instituted. We do not find that either of them was in bad faith,
Tax purchasers are not purchasers in bad faith. Earle v. City of New Orleans, 47 La. Ann. 277, 16 South. 816. The good faith necessary to enable a claimant in possession under a tax title to plead prescription is simply that he shall not have acquired the property mala fide. See Giddens v. Mobley, 37 La. Ann. 417.
Plaintiff and her father took possession by going upon the lots, which were vacant save as to a dilapidated fence upon part of it, and, maybe, an old pigpen.
These they removed and reduced the property to actual, physical possession.
Plaintiff lived then and since in the immediate neighborhood and, of course, knew of this taking possession under the tax title. Yet she remained quiescent for more than a decade.
In Martin v. Langenstein, 43 La. Ann. 789, 9 South. 507, it was said:—
“The law does not require, to perfect a tax title, that the devested owner shall voluntarily place'the purchaser in possession, or that the purchaser shall, in the absence of resistuuce, institute judicial proceedings and be put in possession by the sheriff. The purchaser may take possession himself whenever he can do so without difficulty.”
Plaintiff maintains that the payment by Wilder to the state of the delinquent taxes for 1880 and subsequent years, and the issuance, which followed, by the auditor of a certificate of redemption in her name, had the effect of restoring the property, eo instanti, to her in full ownership, notwithstanding its sale, antecedently, to Kuhn for the taxes of 1878. And, in this connection, she claims that Wilder had only the right left to him to demand of her reimbursement of- the money he had expended in effecting the redemption.
These contentions are negatived in McDougall v. Monlezun, 39 La. Ann. 1005, 3 South. 273, where it was held that:—
“A tax sale is not necessarily canceled and annulled by a certificate of redemption. If the certificate is made in the name of the original owner, it is competent for the purchaser to show that he made the payment cut of his own funds and with what intention.”
Here Wilder, who had negotiated with Kuhn the purchase of the latter’s rights, redeemed the property from the state with his own money and immediately thereupon took title from Kuhn.
The judgment appealed from is found correct and the same is affirmed.