————o————

No. 7055.

## MRS. M. K. WALDROP v. SINGER SEWING MACHINE CO.

### Syllabus.

A contract of sale of movable property which authorizes the vendor to take immediate possession of the property sold on the failure of the purchaser to pay the price in accordance with the terms of sale may be legally enforced to the letter in the absence of objection or protest on the part of the purchaser.

Appeal from the Civil District Court, Parish of Orleans, No. 116,870, Division "D"; Honorable Porter Parker, Judge. Affirmed.

Woodville & Woodville, for plaintiff and appellant.

J. Zach Spearing, for defendant and appellee.

His Honor, CHARLES F. CLAIBORNE, rendered the opinion and decree of the Court, as follows:

This is a damage suit for the alleged taking and removal of a sewing machine from plaintiff's home.

On June 16, 1914, the defendant Singer Sewing Machine Co. leased to the plaintiff, Mrs. Waldrop, a sewing machine at the rate of two dollars per month, by a written contract containing the following stipulation:

"Should the lessee at any time violate or fail to comply with any of the conditions of this lease, such violation operates as immediate cancellation of this lease without any notice, and lessor is authorized to take immediate possession of said leased property, and without notice of cancellation of this lease."

This lease was signed by the plaintiff and the defendant.

Under the provisions of Sec. 2, Act. 62 of 1877, p. 102, such a

"contract shall be considered a contract of sale, and the remedy of the party transferring shall be to enforce the vendor's privilege against the transferree for the unpaid balance of the price."

Sec. 3 reads:

"That it shall not be lawful for the vendors or transferrers of any movable property exempt from general seizure to enter the premises of any person to whom such property has been sold or transferred with the object of removing said property under the assumption or pretense that the buyer or transferree has by agreement given such right of entry or removal."

In the absence of payments as they fell due, the defendant company, on March 16, 1916, nearly two years after the sale, sent down to plaintiff's home and, through its agents, took and removed the machine to their store. Thereupon on June 16 following, the plaintiff filed the present suit.

She alleged that about two years ago she was deserted by her husband and left to earn a living for herself and her two minor children as a seamstress; that on June 16, 1915, she purchased of the defendant company a sewing machine "to be paid for at the rate of one dollar ($1.00) or more per month"; that she "made payments on the said

385

sewing machine aggregating the sum of Eight dollars from said date to March 16, 1916"; that on said last date the agents of defendant company entered her premises without any right and over her protest and by force took away and removed the machine from her premises, in the presence of herself, protesting, and a lady friend of hers; that she has suffered much humiliation as the result of the actions of defendant's employees in thus forcibly entering her premises against the will and over her protest, and forcibly removing therefrom the said machine. This petition is sworn to according to law.

Defendant answered that it delivered the machine to plaintiff under a lease dated June 16, 1915; that the plaintiff did not comply with the terms of the lease and failed to make the payments required thereby; that she paid only eight dollars; that on March 16, 1916, defendant's employees called at plaintiff's residence to collect; that upon plaintiff's failure to pay, respondent's agents and employees stated to her that they desired to take the machine, to which plaintiff made no objection but acquiesced and gave respondent's agents and employees every facility possible.

There was judgment for defendant and plaintiff has appealed.

The law of the case is found in the following decisions:

*Perry v. Hart Piano House,* 10 *Ct. App.,* 170:

> "A provision in a credit sale of personal property that on failure of the purchaser to pay the price the vendor may take possession of and sell the property in satisfaction of the debt, does not authorize the vendor to enter the home of the purchaser during the temporary absence and without his consent and

386

without notice and to take possession of the property and to remove it."

This was in line with the opinion rendered in *Van Wren v. Flynn*, 34 *An.*, 1158.

In the following cases the removal was effected during the absence of the husband from home but against the objections and protest of the wife, present and representing her husband: *Washington v. Singer Sewing Machine Co.,* 10 *Ct. App.*, 270; *Greenlee v. Id.*, 10 *Ct. App*, 271, and *Bettis v. Id.*, 10 *Ct. App.*, 273.

But in the case of *Jenks v. Home Sewing Machine Co.*, 34 *An.*, 1241, the Supreme Court said:

> "The action rests on the provision of Act 62 Ex. Sess. 1877, which provided that contracts like the one here involved, shall be considered as contracts of sale enforceable for unpaid balances only by exercise of the vendor's privilege, and forbidding, under penalties, the enforcement of any agreement that the vendor might enter and retake the property without judicial process."

> "Pretermitting all questions as to the effect to be given to such legislation; it is very plain that it was not intended to inflict penalties or liability in damages, except for trespass and forcibly carrying away property against the will and protest of the transferree. * * * Here we can find no element of a trespass or illegal taking and carrying away. There is nothing to show anything done in opposition to the protest of plaintiff, or to indicate that, had she denied the right of the party to take the machine or prohibited him from doing so he would have persisted in that course."

The Court differentiated that case from the *Van Wren case* when it said in that case on page 1160:

"This case is entirely different from that of *Jenks v. Home Sewing Machine Company*, recently decided, where we rejected the claim of plaintiff because, having consented to the retaking by defendant, she was present when he exercised the right and made no opposition."

In *John v. Meyer*, 36 *An.*, 333, the syllabus reads:

"The landlord's right of re-entry into the leased premises after the expiration of the lease is absolute; and when the person left in physical possession by the tenant voluntarily surrenders the keys and possession to the landlord, even against the tenant's will, the landlord's peaceable entry violates no right of the tenant and gives the latter no claim for damages."

In the case of *Martin v. Langenstein*, 43 *An.*, 789, the Supreme Court said:

Purchasers at tax sales "are not required, where no resistance is offered, to institute judicial proceedings, and to have the executive of the Court, by force, to put them in possession, where there is no necessity for it. They have the right to take possession themselves, whenever they can do so without difficulty."

This opinion was affirmed in *Muller v. Mazerat*, 109 *La.*, 116.

The question to be decided in this case, therefore, is, has the plaintiff, who, by contract, consented to the retaking by defendant, objected to or protested against the exercise of that right, or has she submitted to it. Under the above decisions, if she has submitted she has no cause now to complain. Her cause of action depends upon her resistance, objection, and protest to defendant's actions. The allega-

388

tions of plaintiff's petition seem to indicate that she so understood the law.

The plaintiff testified that she bought the machine for $35 but that she signed no contract as to the terms; she was to pay the best way she could; she paid $8 in all. She explains the manner of entering and taking away as follows:

"Mrs. Van Buren came to my house this morning, on the 16th and knocked at my door, and I opened the door, and she says: 'I am Mrs. Van Buren from the Singer Sewing Machine Company.' I says: 'Yes, come in, Mrs. Van Buren.' She says: 'No, I have come after that sewing machine.' I says: 'Mrs. Van Buren, I can't give up that sewing machine; I am making my living with my machine.' 'Well,' she says, 'I can't help that!' Finally she sat down anyway and talked a minute or two, and I says: 'Mrs. Van Buren, I have a half dollar I will give you on my machine and just as soon as I collect some money this week I will make another payment.' She said to the driver: 'Go take that machine.' The driver was standing in the door. This nigger driver heard me tell her that, that I was making my living sewing on that machine, and I told her just as soon as I had the money I would pay her; so she said to the nigger driver: 'Take the machine,' and so he took the machine, and he went out and she went out with him. They had no papers and nothing with them. Mrs. Van Buren took out the contents of the drawers and laid them on the bed."

Cross-examined: Her husband left New Orleans in August, 1915; he returned about March 1, 1916, but remained only a day; she has five children; two minor children who live with her and three married daughters, one of whom Mrs. N. C. Neal, lives in New Orleans, and two others who live away from here; the collector for the sewing ma-

chine company (Mrs. Long), also came to her house on the morning they took the machine, to collect. Again she says: "I asked her (Mrs. Van Buren) not to take my machine, pleaded with her not to take it, that that was the only way I was making my living, and I told her, while she was emptying my things on the bed, I said: Mrs. Van Buren, if you take my machine, you are taking my living away from me, and I am going to sue the Company, because I intended to pay for the machine"; at the time she bargained for the machine she signed no paper; she did not sign the contract, that is not her signature at the bottom.

At this state of the trial the plaintiff was requested to sign her name several times.

Her daughter, Mrs. Neal, was seated in the room on the morning of March 16, (after recess). Her signature is affixed to the petition and to the affidavit; the signature at the bottom of the contract is also hers; Mrs. Neal, her daughter, is in the court room.

Mrs. Neal thus described what she saw: Why, yes, the bell rang, and I was sitting in the room with mother, and I went out on the porch to see who was at the bell, and I didn't see Mrs. Van Buren when she came in the room; but I came back in the room just in time to see her taking the sewing off of the machine and to hear mother offer her fifty cents, and she refused to take it, and mamma told her if she took her machine, why, she was taking her living away from her, and she was going to sue the company; so she says in an awful impudent way: "I don't care what you do," so then this negro man dragged this machine out of the room; it was about 8 o'clock when Mrs. Van Buren came in; there was no one in the room except her

mother and Mrs. Van Buren; she said nothing to any one, and no one said anything to her.

The defendant put upon the stand Mrs. Monarch, who kept the house in which plaintiff rented her room. She said: "Mrs. Waldrop came and she asked a lady that had the back room, Mrs. Morrison: 'Weren't you in the back room?' Mrs. Morrison said: 'No.' She said: 'I been to see a lawyer and the lawyer said I got to have a witness'; and she said: 'You don't take me to Court, because I wouldn't go to Court for anybody.' She did not see Mrs. Neal there that day; she did not know the machine had been taken out, it was done so quietly.

Mrs. Van Buren testifies that she called at Mrs. Waldrop's in company with Mrs. Long, and told her she had come to get the machine as we had so much trouble; Mrs. Waldrop had nothing to say then; witness asked her to take the things out of the sewing machine drawers. Mrs. Waldrop "emptied the drawers and took her things out of the machine drawers"; there was nobody else in the room but Mrs. Long; she saw no one in the room nor on the gallery.

Mrs. Long is collector for the defendant. She testified that she went with Mrs. Van Buren to Mrs. Waldrop's on March 16th; Mrs. Van Buren said she was from the Singer Sewing Machine Company and she had come to collect on the machine, and Mrs. Waldrop said she didn't have any money, and Mrs. Van Buren said: "Well, it is the rule of the company that when you don't pay, we take the sewing machine"; Mrs. Neal was not there; there was nobody in the room but Mrs. Van Buren and Mrs. Waldrop.

It was admitted that if Mrs. Bosworth was examined as a witness she would testify that the contract was signed by

her on behalf of the company and by Mrs. Waldrop. The contract was admitted in evidence, and we think properly so.

Turner, the colored driver, testified that Mrs. Van Buren went with Mrs. Long into Mrs. Long's room; he went up and stood at the head of the stairs; Mrs. Van Buren told him to take the machine; he walked into the room, put the machine on his shoulders and went out; there was no disturbance; there was no one there but Mrs. Waldrop, Mrs. Van Buren and Mrs. Long.

The plaintiff was recalled as a witness to show that Mrs. Monarch was hostile to her because she had left her house owing her rent. She testified that she left owing some rent, "somewhere around $18 or $20, not over $20"; that she left with Mrs. Monarch a set of real silverware as security, that she had bought when she was first married and for which she had paid "somewhere about $75 or something like that."

The defendant attempted to prove by expert testimony, that the alleged silverware was plated, and that it was not worth more than $10, and that plaintiff had signed a document acknowledging owing Mrs. Monarch $46 rent. On plaintiff's objection, the evidence was ruled out. We do not find it necessary to pass upon the bill of exception taken by defendant.

It is undoubtedly true that the defendant did not enter plaintiff's premises without right and over her protest. On the contrary plaintiff testifies that she invited Mrs. Van Buren to come in.

The evidence has also failed to satisfy us that plaintiff objected or protested against the taking or removing of the machine by the defendant. Three witnesses examined her for the defendant are silent upon the subject and

leave us under the impression that plaintiff submitted to or acquiesced in the inevitable. The plaintiff did not choose to question them upon this essential element of the case. It is true that the plaintiff swears that she pleaded with Mrs. Van Buren not to take away her machine and that she could not give it up because she made her living by it. But here testimony has been so inconsistent upon other points that it cannot be made the foundation of a judgment in her favor on this question. It will be sufficient to recall two instances only: She denied that she had signed any contract or that the signature to the contract produced by the defendant was hers. It was only after her two signatures to the petition and affidavit had been exhibited to her, which seem the counterpart of the signature on the contract, and after she had signed her name in the presence of the judge, and after she was recalled as a witness after a recess, that she admitted that the contract was signed by her. She swore that her daughter, Mrs. Neal, was in the room on the morning of March 16th. By the rules of evidence we are bound to disregard her testimony as well as that of her daughter, because Mrs. Neal, Mrs. Monarch, Mrs. Van Buren, Mrs. Long and Turner, all swear that Mrs. Neal was not present.

There are other portions of her testimony which remain unexplained.

The Judge of the lower Court who saw and heard her failed to be convinced; we cannot say that he erred.

Opinion and decree, May 28th, 1917.

Rehearing refused, June 25, 1917.

Writ denied, December 3, 1917.