THOMPSON, J.
 

 This is a suit to annul a tax sale of a 600-acre tract of land situated in Concordia parish, and known as the Ross and Marks plantation.
 

 The land was sold by the tax collector in 1917 for the taxes of 1916 assessed against the Nebraska-Tensas Company as owner. The defendant, Charles Moritz, was the purchaser at said sale. The sale is attacked for a number of reasons set forth in the original and four amended or supplemental petitions, all of which in an elaborate and well-considered opinion of the trial judge were disposed of adversely to the plaintiff, and the plaintiff’s suit was dismissed.
 

 In this court all of the alleged grounds of nullity are abandoned, except two, viz.:
 

 (1) That the property was assessed and sold in globo and in confusion with the property of other persons; and (2) that, the property being easily susceptible of division, the tax collector offered and sold the whole to the highest bidder for what it would bring without having previously offered a less quantity than the whole. The suit was filed less than three years from the registry of the tax deed, hence there is no question of prescription.
 

 It appears that in 1860 Henry Marks and Janies Ross purchased a tract of land containing 1081 acres, and thereafter this tract by mesne conveyances, designating the land as Ross and Marks tract or plantation, passed to J. B. Sullivan. In 1904 Sullivan sold a part of the Marks and Ross plantation containing 600 acres under a specific description to the plaintiff, the Nebraska-Tensas Company. The balance of the original Ross and Marks tract passed by sequent conveyances to the Dunbarton planting Company, and became a part of the Dunbarton plantation, and was thereafter generally accepted and recognized as forming a part of that plantation.
 

 The 600 acres sold to the plaintiff retained the name of “Ross & Marks place,” and was so designated in the assessment for the years succeeding plaintiff’s purchase until sold at tax sale to the defendant in 1917.
 

 The description on the assessment roll for 1916 being the same as that for previous years is as follows:
 

 “Nebraska-Tensas Co., Ward 8, No. of acres 600. Description of lands: Ross & Marks — E. % of W. % of S. 'E. }4, section 30; S. W. %, section 29; N. E. % and fract. N.
 
 y2
 
 of N. W. %, E.
 
 y2
 
 of S. W. %, E.
 
 ■y2
 
 of N. W. %, section 31, T. 9, R. 8, E. % and N. W. %, section 6, T. 8, R. 8.”
 

 It is admitted that the foregoing description by subdivisions includes land which forms no part of the Ross & Marks place, and which was not owned by the plaintiff company, and it is also admitted that lands were omitted from the specific description which were owned by the plaintiff, and constituted a part of the Ross & Marks place. The assessment on its’ face also shows a double description in several instances. Like errors in the specific description by subdivisions were made in the advertisement and in the tax deed, but the name by which the place was known, the number of acres, and tlie number of the ward in which the land is situated, were given in the advertisement and tax deed the same as in the assessment.
 

 It also appears that the tax debtor owned no land in Concordia parish except the 600 acres known as the Ross & Marks place.
 

 
 *177
 
 If the attempted description of the plantation by subdivisions had been omitted from the assessment, there could be no doubt that the assessment otherwise would have been a perfectly legal and valid assessment, and would have furnished a sufficient basis for a legal tax sale. For, as already stated, the assessment gave the name of the true owner; the name by which the plantation was generally known, and the name by which plaintiff purchased, the number of acres comprising said place as designated in plaintiff’s deed and all previous assessments since plaintiff’s acquisition, and the number of the ward of the parish in which the land is located. All of which indicia, aided and supported by proof of the. fact that the tax debtor owned no other lands in Concordia parish, was a sufficient description to identify the land and to answer every requirement of the law.
 

 Act 140 of 1890 provides that, for the purpose of taxation and tax sales, it shall be sufficient to assess and describe all property according to such description as will reasonably identify the property assessed, such as designating the tract or lot by the name by which it is commonly known, or by the dimensions, or description, or name given in the act translating the ownership thereof, or by such other further description as may furnish the means of reasonable identification.
 

 The act further provides:
 

 “Section 8. * * * That no assessment or tax sale shall be set aside or annulled for any error in description or measurement of the property assessed, in the name of the owner, provided the property assessed or sold can be reasonably identified.
 

 “Section 4. * * * 'That the tax,sale shall convey and the purchaser shall take the entirety of the property, neither more or less, intended to be assessed and sold and such as it was owned by the delinquent taxpayer, regardless of any error in the dimensions or description of the property assessed and sold.”
 

 A quite similar assessment was considered in the case of the Board of Commissioners v. Concordia Land & Timber Co., 141 La. 265, 74 So. 928, and the court on rehearing had this to say:
 

 “Our opinion is that, for the purpose of a valid assessment and sale for taxes, the description of the land, stating the name of its owner, the name by which the tract was generally known, the names of its former owners, the ward in which it was situated, and its area, within a fraction of an acre, was a sufficient description to. identify the land belonging to-the party in whose name it was assessed.”
 

 In view of the statute of 1890 and the foregoing decision, and others along the same line, which it is unnecessary to referió, we think it is clear that the description in the assessment and in the deed was sufficient to furnish all means of a ready and easy identification of the property intended' to be assessed and sold. The evidence in-the record shows that the defendant, shortly after his purchase at tax sale, took actual possession of the plantation and was in such possession when this suit was filed, and this fact is admitted in paragraph 8 of plaintiff’s third amended petition. This-taking of possession clearly indicates that the description in the assessment and deed furnished the means of identification. Weber v. Martinez, 125 La. 668, 51 So. 679.
 

 The question then arises: Did the erroneous inclusion in that part of the assessment describing the land by subdivisions of lands belonging to other persons and not forming a part of the plantation intended to be assessed, strike with nullity the entire assessment and render void the tax sale-based on that assessment?
 

 There, can hardly be any doubt of the-invalidity of an assessment as a basis for a valid tax sale, when two or more separate- and distinct tracts of land belonging to different owners are brought together and merged into one -assessment and sold in
 
 *179
 
 globo. The cases cited by learned counsel for plaintiff support their contention under the peculiar conditions and circumstances of the cases in which that- doctrine was announced.
 

 “Distinct pieces of property, belonging to different persons, between whom there is no privity of estate, cannot legally' be included in the same assessment in the name of one of the owners; nor can the property of such owner be sold for the tax so assessed confusedly with that of the others.” Howcott & Ransdell v. Board, 46 La. Ann. 322, 14 So. 848; Pitre v. Haas, 110 La. 176, 34 So. 361; Waggoner v. Maumus, 112 La. 231, 36 So. 332; Head v. Howcott Land Co., 119 La. 335, 44 So. 117.
 

 But, in our opinion, the rule stated can have no application to the assessment and tax sale in the instant case. The assessment here is entirely dissimilar from the assessment in the cases cited. In those cases there was an unmistakable merging of separate -and distinct tracts belonging to different owners, and it is manifest that the inclusion of those tracts, which did not belong to the owner assessed, was not for the purpose of identifying or describing the lands that did belong to the person assessed, but as independent and separate tracts to contribute their proportion of the taxes assessed as a whole. But under the facts of this case it can hardly be properly said that there was a merger of separate and distinct tracts belonging to different owners in the assessment and sale of plaintiff’s land within the intent and meaning of the doctrine referred to.
 

 The property assessed and sold — the property that obviously was intended to be described in the assessment and sold — -was the Ross & Marks plantation, nothing more and nothing less. There can be no mistake about that fact. There was nothing misleading in the description of the thing intended to be assessed and sold. The erroneous inclusion of the subdivisions which happen to belong to other persons, and which did not belong to the plantation was, to say the most, purely accidental and superinduced by the effort to illustrate and more definitely define and accurately describe the thing that was the object of the assessment, to wit, the Ross
 
 &
 
 Marks plantation.
 

 The asssessment plainly evidences this fact. After having given the name of the owner, the name of the plantation, the number of acres comprising that plantation, and the ward in which the land was located, the assessing officer then proceeded with the view, not to assess separate and distinct tracts belonging to other persons, but to describe the plantation by subdivisions, and in doing so he unintentionally gathered in some subdivisions which did not belong to the place he was attempting to -define, and omitted some acreage that did belong to it. Under these circumstances we do not think that it can with any degree of reason be said that the assessment comes within the rule contended for by plaintiff. The assessment cannot be regarded as the assessment of separate and distinct tracts belonging to different persons confusedly with the thing intended to be assessed and was in fact assessed, viz. the Ross & Marks plantation.
 

 If the lands included in the specific description which did not belong to the place were eliminated, and those belonging to the plantation were to be included in the assessment, and the double descriptions were corrected, then the acreage assessed would practically be the same as that comprised in the plantation, viz. 600 acres.
 

 As we have heretofore said, the people who own the tracts erroneously included in the assessment, and which have become identified with the Dunbarton plantation, are not complaining because they have all the land
 
 *181
 
 which was detached from the original Ross & Marks place, and have paid the taxes on the same as a part of the said Dunbarton plantation, but they paid no taxes on any of the Ross & Marks place. The defendant in this case under his tax purchase is not claiming any of said lands, and nothing more nor beyond the 600 acres presently forming the Ross
 
 &
 
 Marks place. The plaintiff is without reason to complain, as its property has only been sold for the taxes assessed and due by it, and not for any taxes due on other lands.
 

 The second contention of counsel is based on the provision contained in article 233 of the Constitution of 1913, and which is repeated in section 11, art. 10, Constitution of 1921, which requires that the tax collector should first offer a' less quantity than the whole property for the taxes and costs before offering the whole of said property; it being contended that the requirement was not complied with in making the sale in this case. The point was not raised in the pleadings, and counsel urge that it is shown on the face of the deed. The deed recites that:
 

 “Charles Moritz being the last and highest bidder, the said property was adjudicated to the said Charles Moritz, his heirs and assigns.”
 

 Under the Constitution of 1913, art. 233, all deeds made by tax collectors shall be received by the courts in evidence as prima facie valid sales. There is nothing in the deed and no evidence in the record to show that the tax collector did not offer a less quantity than the whole of the land for the taxes and cost before adjudicating the whole of the said property to _ Moritz as the last and highest bidder. In the absence of any such proof the presumption is that the tax collector performed his duty and followed the requirements of the law. The law does not require that the prescribed manner of offering property for sale for taxes should be recited in the tax deed.
 

 Counsel rely on several decisions of this court as sustaining the nullity of the adjudication and sale on the ground last stated. The first case is Norres v. Hays,
 
 44
 
 La. Ann. 912, 11 So. 463. • In that ease it was said that “the tax deed also shows that said article [210] * * * was violated in the sale of the property in block,” but there is nothing in the statement of the case to show what the recitals of the deed were, nor in what manner the sale in block was a violation of the constitutional article.
 

 The next case is Land & Improvement Co. v. Fasnacht, 47 La. Ann. 1296, 17 So. 800. The court found that no specific quantity was offered, and no serious attempt was made to comply with the requirement of selling the least quantity.
 

 The third case is Bristol v. Murff, 49 La. Ann. 358, 21 So. 519, and the court seems to have been of the opinion that the tax deed should contain a recital of compliance with article 210 of the Constitution. The court said:
 

 “The tax deed is prima facie evidence of a valid sale. Its recitals, however, are not conclusive, but may be contradicted as to the essentials required for a valid tax sale. One of these essentials is that the tax collector ‘shall sell the least quantity of property which any bidder will buy for the amount of the interest, taxes and costs.’ In the tax deed there is no recital that article -210 * * * had been complied with.”
 

 The later jurisprudence, however, is not in harmony with the case last stated supra. In Cane v. Herndon, 107 La. 591, 32 So. 33, the deed recited that after reading the advertisement, announcing the amount of the taxes, interest, and costs due an the property, the tax collector proceeded to offer said described property for sale for cash without appraisement, when E. B. Herndon, having bid the sum of $19.95, became the purchaser. There was in that case, as in this one, no affirmative recital to the effect that the least quantity of property that any
 
 *183
 
 bidder would buy for tbe taxes, etc., liad been offered before the offer of the whole, but the court said:
 

 “It is to be remembered in this connection, that, besides those provisions of article 210' of the Constitution of 1879, upon which the plaintiff relies, there is the further provision, that ‘all deeds of sale made * * * by collectors of taxes shall be received in evidence by the courts as prima facie valid sales.’
 

 “The prima facie presumption, therefore, in the ease of a tax sale which is open to construction, is that the meaning intended by the language used is such as would give effect to the deed rather than render it void upon its face. And it is for the attacking party to show that such a construction is inadmissible, or is unsupported by fact.”
 

 In Muller v. Mazerat, 109 La. 116, 33 So. 104, in answer to tbe contention that tbe tax deed was void- because tbe tax collector did not offer tbe least portion of tbe property that any purchaser would buy for tbe taxes and costs due thereon, tbe court said:
 

 “There is no proof that this was not done, and as we have seen, the title conveyed to Kuhn must be held prima facie valid.”
 

 In tbe ease of Slattery v. Heilperin & Leonard, 110 La. 94, 34 So. 139, there was no proof as to whether tbe tax collector at tbe sale offered the least quantity of land before proceeding to offer the whole, and tbe tax deed was silent as to such fact, and tbe court said:
 

 “This court, in Land Co. v. Sholars, 105 La. 357, 29 South. 908, giving effect to this requirement of the organic law, declared that tax deeds are to be received in evidence as prima facie valid sales, and that it is only where there is evidence adduced by the party attacking the sale sufficient to rebut this prima facie character of the deed, and to fatally imperil the presumption of regularity which attaches to. a tax sale, that there is thrown upon the party who holds under the tax title the burden of sustaining the latter , by testimony aliunde the deed.”
 

 See, also, Jopling v. Chachere, 107 La. 522, 32 So. 243.
 

 For tbe reasons assigned, tbe judgment appealed from is affirmed, at tbe cost of appellant.