The opinion fo the court was delivered by
Monroe, J.
This is a petitory action for the recovery of 2860 acres of land, more or less, situated in the parish of Winn, to which the plaintiff claims title, under patents from the United States Government, and of which defendants claim to be the 'owners, in possession, under a tax title from the State of Louisiana.
The allegations of the petition are, substantially, as follows, to-wit:
That, by the Act of Congress of March 3, 1871, and the act supplementary thereto, of May 2, 1872, the Government of the United States granted to the New Orleans, Baton Rouge and Vicksburg R. R. Co., ten alternate sections of land, on each side of the road, which was to be built by said company, when said land had not been sold, reserved, preempted, or otherwise disposed of, at the date of the definite location of such road; and that said statutes provided that, in case any of the land so granted should have been sold, reserved, etc., other lands should be selected by the grantee, in place thereof, under the direction of the Secretary of the Interior, in alternate sections, designated by odd numbers, not more than ten miles beyond the limits of the land originally granted. *1743 That the plaintiff is the assignee of the rights of said New Orleans, Baton Rouge & Vicksburg R. R. Co., and that the rights acquired by assignment were confirmed by Congress, by an act of February 8, 1887.
That certain of the lands originally granted, as aforesaid, were found, at the date of the definite location of the road, to have been sold, reserved, or otherwise disposed of, and that the plaintiff pfoceeded to select others, in lieu thereof, as provided by the statute, and that the selections so made were finally approved by the Secretary of the Interior, and patents issued for the lands so selected, in 1895. But it is further alleged that, long before said selections were thus approved, and before the issuance of said patents, to-wit; in 1889, James L. Wallace, State Assessor for the parish of Winn, illegally and fraudulently assessed said lands to petitioner, as owner thereof; and that, although petitioner denied such ownership, and refused to pay the taxes based on such assessment, John F. DeLoach, the sheriff and ex-officio tax collecter .for said parish, upon April 26, 1890, pursuant to said assessment, exposed the lands for sale at public auction, and adjudicated them to the firm of Kelly, Bernstein & Co., for the amount of the State and parish taxes for said year, 1889.
It is further alleged that Kelley, Bernstein & Co. was composed of Geo. A. Kelley, R. E. Milling, Henry Bernstein, and James T. Wallace, and that said Wallace is the same person who made the assessment under which the sale was made, and that he and his partners knew that said assessment was illegal, but, nevertheless, entered upon, and hold possession of said lands, and that they are therefore, acting in fraud and bad faith. The petition sets forth certain conveyances, by the adjudicatees, of interests in the land in question, and, among others, the conveyance of an undivided one-fifth interest, in 1895, to J. E. DeLoach, and a conveyance, by Kelley and DeLoach, to one J. H. Williams, so that the tax title is now said to be vested in Milling, Bernstein and Williams.
The prayer of the petition is, that the titles set up by the defendants be decreed null, and that plaintiff be adjudged the owner of the land.' ,
The defendants filed exceptions in the lower court (which were referred to the merits) to the effect- that plaintiff is estopped to deny that it was the owner of the lands in controversy, at the date of the assessment. complained of, for the reasons:
1. That said property was assessed in the same way for the year 1888, and that plaintiff paid the taxes based on said assessment and had the *1744 inscription thereof cancelled from the books of the mortgage office. 2. That, in 1894, when the Secretary of the Interior requested plaintiff to amend its list of indemnity selections in certain particulars, plaintiff protested against any action or amendment which would affect its title to the lands already selected; ’and that said proceeding was judicial in character, and plaintiff is bound by its averments therein made. For answer, the defendants say that the lands in question became the property of the plaintiff December 28, 1883, when they were selected by its agent, such selection having been approved by the local officers of the land office and1 by the Secretary of the Interior; that a patent for a portion of said land was issued before the assessment, which is here complained of; that the whole of said land was, from the date of said selection, held as plaintiff’s property, and all 'applications for homesteads thereon were rejected for that reason; and that plaintiff’s interest in said land was an assessable asset, under the laws of the State, and was liable to seizure and sale for taxes. They set up the validity of the title under which they hold, and, in this court, plead the prescription of three and five years. And they further aver that they have paid the taxes on said land for the years 1890 to 1898, inclusive, and should be allowed to recover them in case of a judgment against them on the question of title.
The judgment in the court a qua was for the defendants, and the plaintiff has appealed, and has filed an .'assignment of errors, which discloses the legal propositions upon which it relies, and which may be stated in substance as follows, to-wit:
That the title to the indemnity lands did not vest in the grantee at the date, or. by reason, of the selection of such lands by the grantee, but only upon the approval of such selection by the Secretary of the Interior; up to which time they remained part and parcel of the public domain, not liable to State taxation. That the Secretary of the Interior did not approve the selection of the land^; in controversy until 1895, and hence, that the assessment and sale thereof, for taxes, in 1889, was unauthorized, and that it was error to hold otherwise. It is also said that the court a qua erred in giving judgment for the defendants, in that the assessor, who assessed the tax for which the lands were sold, was a member of the firm which bought said lands at said sale, and that the tax collector, by whom the sale was made, was interested therein, and received a fifth interest in the property. It is also said that the court erred in holding that the act of Congress of July 10, 1886, supports the *1745 contention, of the defendants as to the liability of the lands in controversy to taxation.
It is undisputed that, after the definite location of the plaintiff’s road, and the ascertainment of the lands granted, within the place limits, which were, at that time, reserved, or had been otherwise disposed of, plaintiff made selections of lands within the indemnity limits in lieu of those within the place limits which it was unable to obtain. A list of the selections thus made was filed in the land office at New Orleans, December 28, 1883, and was duly approved by the Register and Receiver, respectively. And there, so far as the lands here in controversy are concerned, the plaintiff appears to have allowed the matter to rest for a period of about eleven years; that is to say, until 1894, when a correspondence was begun, between the plaintiff and the land office at Washington, with reference to a revision of the pending indemnity selections, with a view of having the losses which such selections were to replace more specifically identified. In this correspondence, the plaintiff, through its agent, insisted that the revision, or rearrangement, of the lists filed by it, of lands selected, within the indemnity limits, should in no wise affect its title to the lands thus selected, and the point was conceded by the department.
The correspondence appears to have been opened by a letter, of date July 2, 1894, written by Ernest E. Wesche, as agent of the plaintiff, to the Secretary of the Interior, in which the writer, among other things, says: “By referring to the original indemnity list, filed in 1883, being “ No. 3 of the New Orleans district * * it will be observed that “the company fully complied with the regulations then enforced, in “ specifying its losses, by designating the -same, and the ‘indemnity’ “ tract, for tract, as required by circular of November 7, 1879 * * *. “ But in view of the further decision of the department * * * hold- “ ing that the substitution of an¡ amended list of indemnity selections, “ on a specification of losses different from that assigned in the first, “must be treated as an abandonment of the first, and not wishing to “jeopardize the claim of the road to these lands, which were only re- “ cently awarded to the company, after prolonged litigation, by adverse “ claimants, I submit the matter to you for your consideration and de- “ cisión before proceeding further with the rearrangement of the lists.”
To this letter, a favorable answer was received, and the lists were rearranged without “jeopardizing the claim of the road”, to lands which *1746 had previously been awarded to it, “after prolonged litigation by adverse claimants.”
The plaintiff has offered in evidence, a copy of the rearranged list No. 3 “with all certificates thereon”, duly certified by the Commissioner of the General Land Office. And, as part of the record thus certified and offered, we find the following, to-wit;

Land Department, New Orleans Pacific Railway Oompnay.

List No. 3 (Indemnity).
“Whereas, the New Orleans, Pacific Railway Oompnay has hereto- “ fore, to-wit: on the 28th day of December, 1883, duly selected, under “ the direction of the Secretary of the Interior, those certain tracts and “ parcels of land particularly set forth and described in ‘New Orleans “ List No. 3’, filed in the United States District Land Office at New Or- “ leans, Louisiana, on the twenty-eighth day of December, 1883, as in- “ demnity for certain tracts and parcels of odd numbered sections of “ land, within the place limits of the grant to said Railway Company, “ which said tracts were reserved, sold, granted, or otherwise appropri- “ ated, or not free from pre-emption or other claims or rights, at the “ time the line of its road was definitely located, in accordance with the “ provisions of the act of Congress, approved March 3, 1871, and Febru- “ ary 8, 1872, respectively, which lands, so selected, ane on, and within, “ thirty miles of the line of the road, as so definitely located; and,
“Whereas, the Secretary of the Interior has, since the filing of said “ above described list, further directed that said list should be rear- “ ranged, so that it shall indicate the specific loss, in lieu of which each “ specific selection has been made;
“Now, therefore, to cqmply with the further requirements of the In- “ terior Department, but not waiving any rights or claims, heretofore " acquired, by virtue of its selections heretofore made under the direc- ” Lion of the Secretary of the Interior, the said New Orleans Pacific “ Railway Company has herein designated the lands heretofore selected a as indemnity in said New Orleans List No. 3, and no other lands, and “ has herein set opposite each specific description of land so selected, the “description of the land lost from its grant, in place and lieu of which “ such indemnity land is selected.
“Moreover, the said rearrangement is made, and this list filed, under *1747 “ special authority, conferred by letter of the Commissioner of the Gen- “ eral Land Office “E”, dated August 11, 1894.
“Washington, D. 0., August 14, 1894.
(Signed) “Ernest J. Wescjue, Selecting Agent.”
Beyond this, it appears from the evidence that from the date of the filing of the list No. 3, in December, 1883, all applications for homesteads upon the lands indicated in said list have been rejected, upon the ground that said landd belonged to the plaintiff; it further appears that said lands were assessed to the plaintiff in 1888, and that plaintiff paid the taxes based on said assessment, without objection, and that the inscription of said taxes was thereafter cancelled from the books of the mortgage office. It further appears upon the face of the patents upon which the plaintiff has brought this action, that the lands in question “lie co-terminous with the constructed line of the road”.
Under these circumstances, and even if the plaintiff is not estopped from blowing hot, in the Interior Department, for the purpose of holding on to the lands selected by it “under the direction of the Secretary of the Interior”; and blowing cold, in the courts of this State, in order to escape liability for taxation on those lands, the record which it has made, and has offered in evidence, taken in connection with the other facts which have been mentioned, afford proof sufficient to bring the case within the Act of Congress of July 10, 1886, and within the decisions which authorize the taxation of lands acquired from the Government of the United States, before the issuance of the patents therefor.
The Act of 1886 was adopted for the express purpose of preventing great land-holding- corporations from escaping taxation on their holdings, by merely abstaining from obtaining patents to lands which they nevertheless held so as to exclude all other persons from them, and the language of the statute is at once broad and specific. In so far as it needs to be quoted for the purposes of this case, it reads as follows, to-wit: “That no lands granted to any railroad corporation by any act of Congress shall be exempt from taxation by States, Territories, and municipal corporations, on account of the lien of the United States upon the same for the cost of surveying, selecting the same, or because no patent has been issued therefor; but this provision shall not apply to land unsurveyed.
*******
“Provided further: That this act shall apply only to lands situated *1748 opposite to and co-torminous with completed portions of said roads, and in organized counties.”
As has been stated, the patents, upon which the plaintiff sues, declare that the lands covered by them “lie co-terminous with the constructed line of the road”, so that they are not within the proviso — in the act recited above. But, if this were not the case, we are of opinion that this land would have been taxable, without reference to the Act of 1886. .
The learned counsel for the plaintiff say, in their brief: “The defendants made an attempt to prove that the plaintiff acquired title to the lands in December, 1883. There is not a scintilla of legal evidence to support the contention. Certain lists of selections were filed in the local land office at New Orleans by plaintiff in 1883, and these lists were approved by the local officers and have been offered in evidence. But the approval of the local land officers is not the approval required by the granting act of March 3, 1871. That act requires that selections made in the indemnity limits of the grant, shall be made 'under the direction of the Secretary of the Interior.’ Provisions in all respects similar to this, occurring in other Federal grants in aid of railroads, have uniformly been construed as vesting the Secretary of the 'Interior with the power, and imposing upon him the duty, of examining- into and determining- the right of the applicant for indemnity lands, and of finally rejecting or approving the selections.”
“His final action, In approving'or rejecting, isi held to be a judicial act to such an extent that the date of. his formal approval, and not the date of the issue of the patent, is the date on which the donee becomes vested with such a beneficial title as subjects his lands to State taxation. Before such final approval, the land is unsegregated from the public domain and remains the absolute property of the government. Before the date of such approval, the Secretary may do what he pleases with an application and his findings of fact are not reviewable by any tribunal.”
This is not the construction for which the plaintiff contended when, in its correspondence with the Interior Department, in 1894, it insisted upon its rights, with respect to the land in controversy, as based upon the selections made on December 28, 1883. What are we to understand by the following language, in the letter addressed July 23, 1894, by plaintiff’s agent to the Secretary of the Interior, to-wit:
“And not willing to jeopardize the claim of the road to these lands, *1749 which were only recently awarded to the company, after prolonged litigation by adverse .claimants” ? And by the language of the statement, or caveat, filed with the rearranged list No. 3, to the effect that the land included in said list had been selected December 28, 1883, “under the direction of the Secretary of the Interior” ? If it be true that the lands in question had, at that time, been awarded to the company, “after prolonged litigation by adverse claimants”, such award must • have been based upon the only title which the plaintiff could then have set up, to-wit: the title which resulted from the selection of lands, according to' the act of Congress, by which they were granted — under the direction df the Secretary of the Interior, and, if that title was good enough to secure such an award, the question suggests itself, why is it not good enough for the purposes of taxation ?
We are unable, however, altogether to agree with the learned counsel that “provisions in all respects similar” to that under consideration have uniformly been construed as vesting the Secretary of the Interior with the power of final approval or rejection of selections previously-made; the point of difference being as to the entire similarity of the provisions which are the subjects of construction.
In the case of Wisconsin Central Railroad Company vs. Price County, 133 U. S., 496, to which we are referred as being decisive of the question, the court was construing an act of Congress of May 5, 1864 (granting lands, to the State of Wisconsin, in aid of railroads), the provisions of which, concerning the selection of indemnity lands, read as follows, to-wit: “It shall be lawful for any agent or agents of said State, appointed by the Governor thereof, to select, subject to the approval of the Secretary of the Interior, from the lands of the United States”, etc., and the question arises; is such a provision “in all respects similar”, to one whereby the selection is to be made “under the direction of the Secretary of the Interior” ? We do not think that this question can fairly be answered in the affirmative. The one provision contemplates no action by the Secretary of the Interior until after the grantee has made the selection, when the approval of the Secretary is required, in order to vest title in the lands thus selected; the other, contemplates that the Secretary shall participate in, and control, the selection, as made, and when made, in which ease his action would be equally effective in vesting the title; and in either case, the grantee would have done all that that law requires, in order to make him the owner of the lands selected.
*1750 In the case cited, the law required the approval of the Secretary of the Interior in order to give effect to selections previously made by some one else, and the Secretary, so far from giving his approval, had absolutely refused to do so, on the ground that the Railroad Company had already received about forty thousand acres of land more than it was entitled to, which the Secretary had instructed the Commissioner of the General Land Office to require it to return to the Government.
In the case before us, the law required that the selection should be made under the direction of the Secretary. The averment of the plaintiff’s petition upon that subject is that “petitioner, in accordance with the terms of the said act of Congress upon that subject, proceeded to select, and did select certain others of the public lands, etc.”, and the presumption that the law was complied with is sustained by the other circumstances which have been mentioned. It would clearly have been impracticable for the Secretary, personally, to have supervised and directed the selections contemplated by the statute, but it was not impracticable for him to give directions, with a view to saving, to the government and to the grantee, further trouble, which might have resulted from selections which he could not have approved, and it seems not unreasonable to suppose that such directions as were required were given to the Register and Receiver of the Land Office at New Orleans, since those officers approved the list filed by the plaintiff, although, as far as we are informed, there is nothing in the law which requires such approval, save the provision that the selections should be made under the direction of the Secretary of the Interior.
In Northern Pacific R. R. Co. vs. Meyers, 172 U. S., 596, it appeared that the attention of the government was called to the fact that certain lands, in “place limits,” as we understand it, which were included in the grant to the company, were possibly mineral lands, and it was requested that the government hold its hand in the matter of issuing patents, until the mineral, or non-mineral, character of the lands should have been investigated and adjudicated; and action was accordingly suspended. In that condition of affairs, the State of Montana assessed the lands as the property of the company, and the company filed a bill alleging that at the time of said attempted assessment and tax levies, said lands * * * had not been and are not now certified or patented to said railroad company, and the said lands were not ascertained or determined to be a part of the lands granted to said company, nor were they segregated *1751 from the public lands of the United States, and the said railroad company had and has but a potential interest in them”. And it was argued on behalf of the company, that neither the assessor, nor the railway company could place its hand on a single specific parcel and say it belonged to the company or to the United States. It was held, however, that the matter was to be determined upon the basis of the primary effect of the grant, which was to convey the title, even although that effect might be avoided by the result of the investigation then in progress, and the taxation was sustained. In the case before us, if the selections were made as required by the law under which the lands are claimed, they were made by the grantee under the direction of the Secretary of the Interior, and no other form of approval was required. This was all that was required in order to vest in the grantee at least the equitable title to the lands selected. And it is well settled that such a title is all that is necessary for the purposes of taxation. Northern Pacific R. R. Co. vs. Patterson, 154 U. S., 130; Northern Pacific R. R. Co. vs. Meyers, 172 U. S., 596.
The only fraud charged in the petition is based on the averment that the assessor knew that the lands did not belong to the plaintiff, when he assessed them, and that he was a member of the firm to whom said lands were adjudicated, when sold for the taxes assessed by him, and knew that there was no valid assessment.
In view, however, of the undisputed fact, that the lands were assessed to the plaintiff in 1888, and that plaintiff paid the taxes based on said assessment, without objection or protest, and, in view of the conclusion which we have reached, that the assessment, in 1889, was properly made, we cannot concur in this criticism of the assessment. The propriety of an officer so situated being a party to the purchase of property sold under his assessment may admit of some question, but we are unable, in this case, to discover any such radical objection to it as would justify us in annulling the sale. A demand for the payment of the taxes had been made upon the company, and the company disclaimed title, and refused to pay; the property was not sold by the assessor, but by the tax collector, and, if the latter had been a member of the firm to whom it was adjudicated, the ease would be different. That, five years later, the tax collector should have acquired an interest in said property from one of the adjudicatees, is not sufficient, in itself, td justify the conclusion that *1752 lie acted in fraud or in violation of any legal obligation which, at that time, rested on him, nor is there any such charge in the petition.
Judgment affirmed.