The opinion of the court was delivered by
Nicholls, C. J.
The plaintiff alleged himself to be the owner of certain described property in the Oity of New Orleans. That the city had recorded or charged up against said property certain taxes, tax liens, privileges, mortgages, and adjudications, for the years 1877 to 1879, inclusive, all of which were illegal, null and void for the following reasons, to-wit:
Eirst — That no notice was ever served on petitioner, or his authors,, of the intended sale of this property for taxes.
Second — That the taxes, adjudications and assessments, whereon they were based, are made in the names of persons not the owner.
Third — That all the taxes, tax liens, privileges and mortgages, for said years were prescribed by two, three, five and ten years.
He prayed that he have judgment annulling and cancelling the. said taxes, liens, privileges, mortgages and adjudications, and for costs and general relief.
The city answered, pleading the general issue. The case was submitted to the District Court on the following note of evidence and statement of facts.
“'It is admitted that the Oity of New Orleans adjudicated the property described in the petition as lots Nos. 15, 16 and 17, of square No. 902, to herself, by three separate sales made on August 14th, 1893, and one on June 19th, 1893, respectively, and that all of these adjudications, were duly registered in the conveyance office of the Parish of Orleans; that the said sales were made for the faxes of 1890 to 1897, in the-names of Francois Snaer and Victoria Snaer, respectively; that the-city bases her titles to said property on notices served on one Louis O. Jacobs, to whom the property, lots Nos. 15 and 16, was assessed at the time the notice was served, and at the time the said sales were made;. *2044 that the said Louis C. Jacobs acquired a deed from the tax collector under the Act 82 of 1884.
It is admitted that the plaintiff acquired the property in controversy by purchase from W. H. Howcott, as per act under private signature, filed herein, and marked “D,” and Howcott acquired from heirs of Francois Snaer (whose succession has never been opened), after the ■sales to city and Jacobs.
It is admitted that the tax research certificates, filed herein and marked “E” and “F” and “G,” correctly show the assessments of the properties in controversy, and their condition on the tax rolls. Plaintiff •offers conveyance certificates marked “H.”
The said admission, by plaintiff, of the sales and adjudications to the Gity of New Orleans, is made, without, in any manner) admitting their validity or legality, but on the contrary denying their validity and legality.
It is admitted that at the time the city served her notices of sale on Louis C. Jacobs, his deed was extant upon the records of the conveyance office of the Parish of Orleans.
It is admitted that the late Francois Snaer acquired this property in 1837.
It is admitted that Francois Snaer died in 1880; that the service of the notice of the city, on which the sale of lot No. 15 of square No. '902 is based, was made in the manner set forth on the copy from the stub of the notice book of the Oity of New Orleans, herein filed, and marked “A.”
The District Court rendered judgment in favor of the plaintiff, annulling and canceling the adjudications to said city, being sales Nos. 1610, 1611 and 1553, made, respectively, on August 14th, 1893, and June 19th, 1893, of lots Nos. 15, 16 and 17, in square No. 902, bounded by Prieur, Johnson, Lapeyrouse and Onzaga streets, in the Third District, and further ordering the cancellation of the inscriptions of said adjudications and of all tax liens, privileges and mortgages for city taxes, for the years 1879 to 1897, both inclusive, bearing upon said lots and upon lot No. 16, in square No. 113, bounded by St. Olaude, Rampart, St. Philip and Dumaine streets, in the Second District of this •city; costs of said suit to be paid by defendant.
The city appealed.
*2045 Opinion.
The proceedings in. the matter of the adjudication of the lots Nos.. 15, 16 and 17, of square No. 902, to the State of Louisiana, in enforcement of its taxes, are not before the court, nor are they attacked by the-plaintiff.
The adjudications which are attacked are (1st) that of the State,, made as owner to one Louis O. Jacobs, under Act 82 of 1884, and (2nd) those made to the city by itself in enforcement of taxes, while the title-stood on the records as the property of Louis O. Jacobs, under his. purchase from the State, under the act pf 1884.
It may be that the title of the State', under the adjudications made to-itself for taxes, were defective, but they are not contested by the pleadings, and we cannot, in this proceeding, ignore them or declare them, null. We have to take the case as we find it.
If we assume that the title of the State, under the adjudications to-itself, were valid, the State was authorized to sell the property as any other owner was, if the tax collector had authority to sell it in its. behalf. The tax collector did have the authority to sell it under Act 82 of 1884, and under the provisions of that act -adjudicated it to-Jacobs, giving him a deed which was duly recorded.
It is not claimed that Jacobs did not comply with his bid, by paying all the State taxes then upon the property, but it is asserted that he-did not pay the city taxes then due upon the property; that his doing so was a condition precedent, under the act of 1884, to his acquiring any title to the property, or being entitled to a deed from the tax collector, and that, therefore, the city was not justified in assuming, at any time, that he was the owner or warranted in taking any proceeding in enforcement of its taxes contradictorily with him.
If Jacobs, having become the adjudicatee of the property under a-sale by the State under the terms and conditions of Act No. 82, of 1884, had failed to pay all the State taxes then due upon it, the State would have been entitled to ignore the adjudication and proceed to sell the property, de novo, notwithstanding the fact that the tax collector might have given him a deed. This would have been permissible under the decisions of this court in Martinez vs. State Tax Collector, 42 Ann., 677, and Renick vs. Long, 47th Ann., 914.
We did not declare in those cases that payment of the city taxes, with which the property was affected at the time of its adjudication at a *2046 sale for State taxes, under Act 82 of 1884, was a condition precedent to the vesting of a title in the adjudicatee at such a sale, and that the failure so to pay would strike with nullity any .deed given to him by the tax collector.
The State authorities were not charged with the duty of collecting the city taxes. These remained upon the property,_ subject to payment ,by the adjudicatee, under the personal obligation assumed by him so to •do (West vs. Negrotto, 52 Ann., 390). If the property passed from the •owners of the property owing the tax to the State, in enforcement of .State taxes, the owners so divested of title were in no position to set up as against the acquisition by a third person of a legal title to the .same from the State, that this latter purchaser had not paid the city taxes, then due on the property. If the property had passed from them to the State, it was no concern of theirs, whether, for the purpose of acquiring title, the adjudicatee paid the city taxes immediately or not. That was a matter between the city and the adjudicatee.
The original owners could not have brought a petitory action against the tax adjudicatee, under such circumstances the deed to the adjudicatee remaining-unattached (West vs. Negrotto, 48 Ann., 926).
The city finding that the property had passed from the former owner to the State, and from the State to a purchaser, who had, as part of the purchase price, assumed to pay all the city taxes upon it, had the right to proceed against the property, and, contradictorily with this purchaser, to enforce its taxes.
It was not compelled to test the validity of the purchaser’s title, as derived from the State, before doing so. The simple fact itself that it may have proceeded contradictorily with this purchaser would not make an adjudication, based upon such proceedings, absolutely null and void. It might well be that the title of an adjudicatee, under proceedings so conducted, might be wholly defective, because the State itself had acquired no valid title as against the original owners under its own tax proceedings, and, having none, could confer none upon the party who purchased from it, under the act of 1884, and fthat this same defect of title would follow the title conveyed, or attempted to be conveyed by the subsequent tax proceedings taken out by the city, but there is a difference between a case where the defect in the title is traced back to the State’s proceedings, and the State’s title is attacked and the attack is carried forward against subsequent transferees, and a *2047 ■case where the attack is made to rest primarily and exclusively upon the city proceedings, leaving the State’s proceedings, the State’s own title, and that transferred by her, unattacked.
The plaintiff points ont to us the assessments which had been made on the property, under which assessments the State had proceeded to enforce its taxes, and they tell us that those assessments were radically null, and no title could possibly pass to the State under them, and we should ignore them, but we do not feel justified in doing so. The assessments made at the time are not before us; the adjudications made to the State are not before us. We know nothing- of the circumstances of the adjudications, some one or more may have been legal and carried the title. We do not know at what time, in 1880, Francois Snaer died. Victoria Snaer, in whose name the assessments were made for a time, was, we should judge, the widow in community of Francois Snaer, and, if so, an assessment in her name might carry her interest at least in the property.
We are not satisfied, under the pleadings and evidence in this case, that the judgment should stand as it is in respect to lots Nos. 15, 16 and 17, in square No. 902.
Appellant is satisfied with the judgment as to lot No. 16, in square No. 113, except that he contends that the cancellation of the tax privileges and mortgages thereon should not he decreed for taxes after 1895. In calculating the prescription of three years as applying- to the cancellation of the inscription of tax liens and privileges, the 31st day of December of the year in which the taxes were assessed, is the date from which the prescription begins to run; the prescription being interrupted by any suit which prevents the collection of the taxes, and the time of such interruption being excluded in making the computation of the three years.
The present suit was instituted on the 21st day of December, 1899. The liens, privileges and mortgages securing the payment of the taxes, after the year 1895,, on lot 16, of square No, 113, are not prescribed.
For the reasons assigned, it is ordered, adjudged and decreed that the judgment appealed from be amended, by decreeing the cancellation of the inscription of the city taxes on lot 16, of square No. 113, for the years 1879 to 1895, both inclusive, instead of for the years 1879 to 1897, both inclusive, and to that extent, as amended, the judgment he affirmed, but that otherwise the judgment appealed from be and the same is hereby annulled, avoided and reversed, and plaintiff’s demand *2048 be and the same is hereby dismissed as of non-suit. Costs of appeal to-be borne by the appellees.