Statement of the Case.
NICHOLLS, C. J.
The plaintiff alleged that on the 4th of August, 1894, the tax collector for the parish of Calcasieu adjudicated to the state of Louisiana, after compliance with all legal requirements, section No. 1 of township 6 south, range 3 west, in Calcasieu parish, for taxes assessed against it by *166 the state of Louisiana and parish of Calcasieu in the name of the estate of Marcel Dare; that the tax deed evidencing said sale was recorded in the Book of Conveyances in the recorder’s office of the parish of Calcasieu on December 21, 1894; that by and through the petition he was then filing he gave notice to J. A. Haas, to whom said property had been sold at the sale made in the succession of Marcel Dare on the 9th of September, 1893, by Eontenot, administrator, as appeared by deed recorded in the office of the recorder of Calcasieu parish; that he was, in his petition, applying to the district court for the parish of Calcasieu for an order, directed to the sheriff of that parish, to seize the said property, unless enjoined by the court by reason of petitioner having acquired the same by deed from the .state of Louisiana, executed in accordance with law, which he annexed.
He averred that the title to the property had become quieted by the prescription of ■one and three years, as provided for by the laws of Louisiana and the constitutional prescription of article 233 of the Constitution ■of 1898, which prescription he specially pleaded in support of his tax title. He gave notice to J. A. Haas that, unless a proceeding to annul was instituted within 10 days from the service of the petition he was filing a ■citation thereon that the said tax title would be confirmed. He prayed for an order to the sheriff of Calcasieu, directing him to .seize the property described in the deed from the state of Louisiana to him, and, after 10 days’ notice of the seizure, to place petitioner in possession of the property, unless enjoined by the court, for citation of Haas, and finally that he have judgment in his favor and against J. A. Haas, and sustaining the prescription of one and three years, and confirming title for David J. Beid, tax collector, in name of Marcel Dare, of the ■described property, to the state of Louisiana, for taxes aforesaid. He also prayed for .general relief.
The court granted, as prayed for, an order to the sheriff, and the defendant, Haas, was cited. He answered, but, before doing so, pleaded, as a peremptory exception, want of tender of reimbursement of the state and parish taxes which he had paid upon the -tract of land claimed by the plaintiff. He averred that from the date of his purchase of the said land on September 9, 1893, and the adjudication of the same to the state on the 4th of August, 1894, said land had.been regularly assessed to him, and the state, through the sheriff and ex officio tax collect- or of the parish of Calcasieu, had during all that period annually demanded and received payment from respondent of taxes on said land, and upon which taxes had also annually been paid by him to the parish of Calcasieu, and reimbursement of which taxes should have been tendered to him by the plaintiff before the institution of this suit; that as the state of Louisiana could not, as against respondent, assert its claim of ownership to said land in virtue of the adjudication to it without such tender of reimbursement, neither could the plaintiff do so, who rested his claim of ownership upon the adjudication to the state, and was therefore bound by all exceptions and estoppels that would apply to the state, had this suit been instituted by it; that the plaintiff was himself aware that said tract, after the adjudication to the state, was annually assessed to him, and that he was annually paying taxes to the state thereon, because respondent for some of said years paid said taxes to the plaintiff himself, who was acting as deputy tax collector, and respondent held receipts for such taxes signed by the plaintiff himself.
In case the foregoing exception should be held inapplicable and not well grounded, then, in that event, and in the alternative, respondent pleaded that the state of Louisiana, having, since the forfeiture to it of said land, and up to the present date, annually demanded and received from him payment of state taxes, had thereby treated its title to said land as a nullity, and had recognized respondent’s title, and the state was now estopped from asserting any claim of ownership to said land, and plaintiff, who based his title upon that of the state, was equally barred by said estoppel; that the estoppel pleaded operated personally against the plaintiff for the additional reason that he himself had collected from respondent taxes on said land for the state and parish taxes, as deputy tax collector, and when he took title from the Auditor by private sale, December 16, 1901, he did so with full knowledge of *168 the fact that the state had been collecting taxes from respondent up to the date, notwithstanding its claim of ownership in virtue of .said adjudication; and the respondent pleaded said estoppel in bar of his action.
Answering further, and in the alternative, in case his exception of want of tender be not sustained, he averred that the sale and adjudication to the state by the sheriff and ex officio tax collector of the parish of Calcasieu on August 4, 1894, of section 1, Tp. 6 S., R. 3 W., Calcasieu parish, La., and which sale and adjudication was claimed by the plaintiff as the basis of his title, was null and void, for the reasons afterwards set forth, and, being null and void, a sale by the Auditor of said land to the plaintiff was also null and void; that Joseph H. Fontenot represented the estate of M. Dare as administrator, and had regularly paid the taxes annually on the lands belonging to the said estate in Calcasieu parish previous to the year 1894, and though the record of the clerk’s office of that parish contained evidence of the representative capacity of said Fontenot, and though the records of the tax collector’s office of that parish showed that the said Fontenot paid the taxes on the Dare land August 12, 1893, and for all years previous thereto, through the then sheriff and ex officio tax collector, knew that Joseph IT. Fontenot was the administrator of the estate of M. Dare, and that he resided in the parish of St. Landry, and that the children and heirs of the said Dare also resided in the parish of St. Landry, yet neither at the end of the year 1893, nor at any time, was any notice given said Joseph H. Fontenot, administrator, or to any of the heirs of the said Dare, nor demand made for either the state or parish on state taxes assessed and levied against the estate of the said Dare in the parish of Calcasieu for the year 1893, and the sale and adjudication of the said land to the state was therefore in direct contravention of the provisions of article of the Constitution of 1879, and was and is for that reason null and void.
That he owned by purchase at judicial sale only a portion of section 1, Tp. 6 S., R. 3 W. That the Dare land was sold in lots of 100 arpents, and according to a survey and plat filed in the record office in the parish of Calcasieu — the Dare lands, forming a large tract of several thousand acres, all in one body, being in the parish of Calcasieu; the entire body being divided into two portions by the Bayou Nez Pique, the. boundary line between the two parishes — and that he acquired lots Nos. 33, 34, 35, and 36 of said plat of survey, aggregating 400 arpents; being, as above said, a portion of section 1, Tp. 6 S., R. 3 W. That residents of the parish of Calcasieu at the time of the said adjudication to the state owned the remaining portion of section 1, and upon which they paid the-state and parish taxes for the year 1893.. That the sheriff and tax collector included in the same adjudication to the state not only-the portions of section 1 upon which all taxes had been paid, but also included in the-same adjudication SCO- acres of the lands formerly belonging to the Dare estate, but which had at that time been acquired by respondent, and were actually located in the parish of St. Landry, as the designation of Bayou Nez Pique as the western boundary, as well as the designation of the other boundaries of said tract, plainly showed. That the-double assessment of the portion of section-1 belonging to owners residing in the parish of Calcasieu, the inclusion in the said assessment of 800 acres of respondent’s land situated in the parish of St. Landry, and the-omission from the assessment of any description of the portion of said section 1 that belonged to the estate of M. Dare at the time the said assessment was taken for the years. 1892 and 1893, constituted errors and nullities in said assessment, of radical character, not curable by any prescription, and that all of said errors and nullities were not only incorporated into the assessment on the land of the estate of M. Dare for the said years, but were contained in the advertisement which the sheriff and tax collector of Calcasieu parish made of said lands for sale for-the taxes of 1893, and, when said tax collect- or offered said lands for sale, he did so upon said description, and, when the adjudication was made to the state, it was made of all said lands, as if they belonged to the estate-of M. Dare, and with the same erroneous and radically defective description as had been incorporated in the assessment of the-lands of M. Dare for the years 1892 and 1893, all of which was well known to the plaintiff,. *170 who, when said lands were offered for sale by the sheriff, bid them in for himself under said radically defective description. That the plaintiff, after so bidding in the lands at said offering, did not take a deed from the sheriff, because he was aware of the said in-formalities and nullities in the assessment and in the adjudication to the state. That the plaintiff was a deputy tax collector at the time of the said offering, and was given to understand, as respondent was informed, that he could not legally bid upon property offered by the sheriff, and that he was partly deterred by that consideration from taking a deed to the property. That the plaintiff, as deputy sheriff and deputy tax collector, made the returns to the Auditor of the lands adjudicated to the state, including those assessed to the estate of M. Dare, and that which had been offered for sale at public auction, and failed to sell, and at the same time he made said return, availing himself of his accurate knowledge of the ownership of the said lands, and of the errors and inaccuracies of the description of them as contained in the adjudication to the state, selected therefrom in respondent’s purchase of the same, as shown by the judicial sale of record in the clerk’s office of Calcasieu parish, and offered a bid to the Auditor for said portion of section 1, and obtained from that officer a deed ■of sale set out in his petition.
That the adjudication and sale to the' state, and subsequent sale by the Auditor to the plaintiff, of the land claimed by him in this suit, were null and void, and of non effect, and should be so decreed in this court. That none of the prescriptions pleaded by the plaintiff cured the nullities herein above set forth. That the provisions of article 233 of the present Constitution had no application to forfeitures to the state of land for nonpayment of taxes, but apply exclusively to tax sales made to individuals. Neither did the three-years prescription established by section 5 of Act No. 105, p. 155, of 1874, apply to sales to the state, or cure such nullities as were pointed out above; nor was respondent barred by the provisions of Act No. 80, p. 8S, of 1888, and especially by section 5 of said act, from his action to annul the claim of ownership to his land set up by the state and by plaintiff, who claimed from the state. That if any legislative act, and especially section 5 of Act No. 80, p. 90, of 1888, were intended to bar him from suing to annul the forfeiture of his land to the state upon the grounds above set forth, such legislative acts, and especially section 5 of the said act of 1888, are to that extent in violation of article 210 of the Constitution of 1879, under which that question was to be determined, and which article especially forbids any forfeiture of property for the nonpayment of taxes without notice to the delinquent taxpayer; and all such legislative acts, and especially the said section 5, were unconstitutional to that extent, being in violation of article 6 of the Constitution of 1879, which guarantied to every citizen that he should not be deprived of his property without due process of law. That when he purchased said land from the estate of M. Dare, on September 9, 1893, he was ignorant of any unpaid taxes on or assessed against the said land; that he was ignorant that they were advertised for sale by the sheriff and tax collector of that parish in the month of August, 1894; that he was ignorant that said land had been sold and adjudicated to the state; that he was ignorant that the Auditor subsequently advertised the lands for sale at public auction, and that they failed to sell, and that the Auditor thereafter held them for sale, and did actually sell them at private sale to the plaintiff on December 16, 1901. That the first knowledge of all these occurrences that he had was through a letter received from plaintiff, dated 19th of December, 1901, informing him that he had purchased the land from the Auditor at private sale, and that he would shortly file proceedings for possession, which letter was a few days followed by another from the plaintiff informing him that he had purchased 15 tracts of land from the Auditor, including his tract, and demanding $600 for the cancellation of his sale, which amount was subsequently voluntarily reduced by the plaintiff to $300. That he had been informed by creditable persons at Lake Charles that the assessments of property for the years 1898 and 1894, and for some years subsequent thereto, were very negligently and erroneously managed, being left almost exclusively to subordinates in the assessor’s office and the subordinates in the sheriff’s office previous to the term of the present sheriff, and by reason of the sale *172 maladministration very many erroneous and double assessments and erroneous adjudications of lands to the state had occurred. That the said mismanagement of those branches of the public service not only caused individual instances of hardship and unnecessary expense to owners of property, and caused general complaint, but brought the administration of these branches of the public service into general disrepute. That respondent was further informed that the subordinate officials of the assessor’s office, in combination with others, including the plaintiff, who did not bid against or compete against each other, took advantage of double and erroneous assessments to acquire title to property at public auction and from the Auditor, requiring the expropriated owners to submit to extortionate terms for the cancellation of their claims of ownership, and that the plaintiff was himself one of the chief beneficiaries in the speculation which the aforesaid official mismanagement had made possible; and it was against good conscience, and would be subversive alike of justice and law, to give him the aid of the courts to enable him to reap the fruits of a speculative venture of such a questionable and immoral character as was his claim of ownership to respondent’s land.
In view of the premises, he prayed that his exception of want of tender be first tried and disposed of, and, should the court hold said exception untenable, then, in that event, and in the alternative, he prayed that his plea of estoppel and answer be tried; that the said suit be dismissed upon his exception of want of tender, and, if that be not done, then, upon the trial of the plea of estoppel and answer, that the plaintiff’s demand be rejected, and, in reconvention, that the adjudication of respondent's land to the Auditor on August 4, 1894, and the, Auditor’s sale of the land to the plaintiff on the 16th of December, be annulled and canceled, and respondent quieted in the ownership and possession of the said land. He prayed for general relief in the premises.
The plaintiff, without admitting the merit of defendant’s plea of tender, tendered the sum ■ of $78,60, as being the amount of state and parish taxes paid by defendant on the property sued for. He prayed that defendant be ordered to accept the same, and that judgment be rendered without further proceedings.
Plaintiff subsequently pleaded that defendant was estopped from contesting the legality of the tax sale of the property sued for from the estate of Marcel Dare of date of August 4, 1894, because he had recognized and treated the same as legal and binding by purchasing, under the provisions of Act No. 80, p. 88, of 1888, a portion of the property included in said sale.
J. H. Fontenot, as administrator of the succession of Marcel Dare, warrantor of defendant’s title, intervened in the suit, and joined the defendant in resisting plaintiff’s demand. He adopted all the exceptions, defenses, and pleas urged by the defendant.
The district court dismissed plaintiff’s demand, and quieted the defendant, Haas, in the ownership and possession of the land, and plaintiff appealed.
Opinion.
The defendant, John A. Haas, bought on the 9th of September, 1893, lots Nos. 33, 34, 35, and 36 of section 1, township 6 south, of range 3 west, aggregating about 400 arpents, at a judicial sale made in the succession of Marcel Dare. These lots are situated in the parish of Calcasieu, and formed part of a larger tract which extended over into the parish of St. Landry. His title was placed of record.
On August 4, 1894, the sheriff, ex officio tax collector of the parish of Calcasieu, offered for sale under the provisions of Act No. 85, p. Ill, of 1888, property of delinquent taxpayers, and among the same was certain property assessed in the year 1893 as belonging to the succession of Marcel Dare. Receiving no bid, it was adjudicated to the state under the following description: “Est. Mar-eel Dare, 1,440 acres, section 1, Tp. 6 S., R. 3 W., also 800 acres, bounded south by lot 2, north by lot 4, west by Bayou Nez Pique, and east by Jos. Guillory tract, for 1893. Assessment, $2,700; state taxes, $16.20; interest, $1; advertising, $1; collector’s cost for making and recording and copy of deed, etc., $1.50; parish tax, $27; aggregating the sum of $46.80.” A deed of this sale of August, 1894, was executed on December 17, 1894, and recorded in the parish of Calcasieu on the 21st of December of that year.
*174 On the 16th of December, 1901, the State Auditor executed a deed of sale to the plaintiff, Columbus Pitre, to section 1, T. 6 S., R. 3 W., “with ail the buildings and improvements thereon/’ The property was described as being situated in the parish of Calcasieu, and as having been adjudicated to the state on the 4th of August, 1894, as the property 'of Marcel Dare, under the provisions of Act No. 80, p. 88, of 1888, for unpaid taxes due the state; it having failed to sell. The act contained the following recitals: Pie (the Auditor) had received bids for the described property, as would appear by reference to an application made by the present plaintiff December 7, 1901, dated at Lake Charles, and that the sale was made for the price of $11.17.
“Amount of adjudication to the state, including state and levee tax for the year 1903 .......................... $5 14
20 per cent, thereon................... 1 03
Amount taxes due the state for the years 1893 to 1901 (inclusive)..............
Paid tax Coll.........................
“All parish taxes for the year 1893, and all subsequent years to date, and costs of enforcing Act No. 80 of 1888, having been paid to the tax collector, as evidenced by his certificate, dated December 7, 1901, on record in the Auditor’s office, amounting to Five Dollars.”
This act was recorded in Calcasieu on 22d of January, 1892.
The plaintiff, three days after buying the property, notified the defendant he had done so. The present suit was instituted on January 4, 1902.
Jos. H. Fontenot, administrator of the succession of Marcel Dare, who lived at Yille Platte, St. Landry parish, paid all the taxes due on the property of the succession in Calcasieu parish up to the date of the succession sale. He did not pay the taxes of 1893, as they only became exigible after the sale. Though the administrator had received notices as to taxes for prior years, he received no notices for the year 1893, nor did the defendant, Haas, receive any notices. Fontenot was still administrator at the time of the trial of the case. Written in pencil under the assessment for 1893 are the words, “Yille Platte, St. Landry Parish, La.”
■ The property was not assessed for the year 1894 in the name of the estate of Marcel Dare, but in the name of the defendant, John A. Haas, and so continued to be assessed, and he himself paid taxes for that year, as well as for all subsequent years, on section 1, township 6 south, range 3 west, including those due upon that property up to the time of trial.
Plaintiff was at one time deputy state tax collector for the parish of Calcasieu, and collected from defendant the taxes of the years 1898 and 1899 on this property, and signed the tax receipts for the same. The assessments for 1892 and 1893 were made upon the nonresident rolls, and were as follows: “Dare, Marcel, Bst. N. R. 1,440 acres, Sect. 1 — 6—3; also 800 acres, Bd. S. by lot 2, N. by lot No. 4, W. by Bayou Nez Pique, E. by Jos. Guillory tract. Cash value, $2,700; total assessment, $2,700; parish tax, $27; state tax, $16.-20; district levee tax, $45.30.”
Under the official assessment of 1893 are written the words: “Section 1, T. 6 S., R. 3 West. Pd. March 24, 1902. Sold to state taxes 1893 8/4 9/4.” Directly across the assessment sheet, opposite these words, are written the figures “400” under the words “Total Assessment,” and also under the words “Parish Tax.” Under the words “State Tax” are the figures “240.” Under the words “acreage tax” are the figures “240.” The words: “March 24, 1902. Sold to State. Taxes 1893. 8/4 9/4” — were placed upon the assessment sheet with a stamp. The stamped portion of this addition seems to have been placed on the sheet by Henry Block, a lad 17 years old, a clerk in the tax collector’s office. The other additions were placed on the books by the present plaintiff, Pitre. Plaintiff claims that he was authorized by the then deputy tax collector to make this entry.
Its purpose will appear later.
The plaintiff made to the State Auditor foj the tax collector the returns of the land which had been offered for sale on August 4, 1893, and which, not being bid for, had been adjudicated to the state. He went himself to Baton Rouge to make for the sheriff a settlement with the Auditor. He had a few days previously made out at Lake Charles a bid to purchase this particular property, and took the same with him when he went to Baton Rouge. He would have applied to the Auditor to purchase the 800 acres in St. Landry parish, which, it would appear, had been *176 also bought by the defendant at the succession sale; but the latter, having been advised of his intention to do this, forestalled him, and recovered it himself. Plaintiff, having been advised of the fact by the Auditor, did not make the application. Plaintiff claims that he had tendered his resignation in November, and therefore he was not a deputy tax collector when he made his application to the Auditor to purchase and when he bought this land; but there is„ no evidence that the resignation had been then accepted, and he unquestionably kept up his official connection de facto with the tax office until after he had purchased. Pie had a direct personal interest in being first upon the spot when the official returns should be made to the Auditor of these lands, and particularly with papers in his possession which would enable him to exhibit to that official separate valuation upon the portion of the lands in Calcasieu parish, and with a certificate which would show that all the taxes upon that portion of the land had been paid.
In order to get a clear certificate of full payment of taxes, he paid himself before he had purchased the land a small amount of parish taxes on it which had not been paid. Referring to this matter, he said in his testimony; “I recognized the right of anybody buying these lands from the Auditor. I wanted to be one of the first ones to get there. I recognized that was a necessity. I [had] taken a list of each and every piece of land that had sold that year for the amount due on each for the parish taxes. Mr. Wetherall [the then deputy tax collector] went over that list with me, and we footed up the amounts, and I paid the amounts that was due to the parish on all of the special pieces. He gave me a certificate to attach to each application. Before he did so, he asked me — he says — T will do this to accommodate you, but,’ he says, ‘when I go to make the tax receipts out, I will ask you to assist me to find these old rolls — the amount of parish taxes due by each one.’ So in March he asked me to assist Henry Block in making out those things, and I did so.”
Section 50 of Act No. 85, p. 129, of 1888, provided that in all cases where two or more parcels of ground shall have been assessed in any given year or years to one person or firm at a certain valuation for the whole together, without distinguishing the valuation of each lot in parcel separately, the tax collector is authorized to receive the proportion of taxes under such assessment fairly due upon any one or more of such lots or parcels separately; such proportions to be ascertained and fixed by a certificate signed by the assessor and approved by the tax collector, and such lots or parcels upon which their proportions shall be so paid shall be free from proportion or taxes pertaining to the other lots or parcels of such assessment. The ninth section of the same act declares that, when a line between two parishes divides a tract of land or plantation, each portion shall be assessed in the parish in which it lies.
The property of the succession of Dare was situated partly in Calcasieu parish and partly in St. Landry; and, under the law, it should have been neither assessed in block by the tax assessor, nor sold in block by the tqx collector, of Calcasieu parish. Howcott v. Board, 46 La. Ann. 322, 14 South. 848; George v. Cole, 109 La. 816, 33 South. 784. The assessor of Calcasieu was not authorized to sell property in the parish of St. Landry. Had this property been entirely situated in Calcasieu, and assessed as a whole at, a certain valuation, the manner of reaching the separate valuation to be affixed thereafter to particular parts was expressly pointed out by law.
It is not pretended that either the assessor or the tax collector placed the separate valuation upon the property herein claimed. It was made, on the contrary, utterly without authority and illegally by the plaintiff. To have followed the provisions of the law in making the separation of values would have been attended by delays, and brought about, doubtless, a publicity which would not have suited the plaintiff’s plans. It is unquestionably true that the plaintiff and several others, all holding official positions, were engaged in speculating in the purchase of lands sold at tax sales.
The recitals of the deed of sale of the tax collector to the state in 1893 are of the most general and sweeping character. They do not descend at all to particulars. They are mere conclusions of law, and not statements of fact, and it was not attempted to sustain them as to the facts of this particular case. *178 The tax collector declares that he acted in the matter in pursuance of the requirements of Act No. 85, p. 111, of 1888, and that he had strictly complied with its requirements in publishing, mailing, and delivering the notices as required by sections 50 and 52. There is not the slightest allusion in any manner to the defendant, Haas, and none, so far as notice was concerned, to the succession of Marcel Dare, or its administrator, or to the heirs of Dare. Adolph v. Richardson, 52 La. Ann. 1156, 27 South. 665; Gowland v. City of New Orleans, 52 La. Ann. 2042, 28 South. 358; Geddes v. Cunningham, 104 La. 313, 29 South. 138.
Had this property been adjudicated to a private individual, the sale would have been, at its date, an absolute nullity. A fortiori was it a nullity quoad the state, at whose instance the proceedings had been inaugurated, and which were prosecuted by its officers, ignoring the very rules which it had enacted itself as those which were to govern and control the subject-matter. The question for our decision is whether, under the facts of this special case, the title set up and asserted by the plaintiff can be maintained.
The adjudication to the state was made in August, 1894, under the Constitution of 1879. Haas was then the owner of the property, and he was such when the taxes of 1893 became exigible. Article 210 of that Constitution justified him in expecting to receive notices of any adverse proceedings directed against the property. Though he received no such notices, the state officials adjudicated the property to the state, and there matters rested. No attempt was made to take possession actually, or to acquire constructive possession by writ and notices of seizure. Notices to defendant were given no more after the adjudication than before. Instead of placing the property upon a separate roll, and continuing the assessment as it had been in the name of the estate of Marcel Dare, the officials changed the assessment at once, and made it in the name of defendant, the purchaser at the succession sale. Under these assessments he punctually paid all taxes.after 1893, and the moneys went into the State Treasury, and were expended by the state for its own benefit until in 1901 the Auditor, in an extrajudicial proceeding, and without notice to defendant, sold the property to a party acting as an official in the tax collect- or’s department. The Auditor unquestionably acted in error and in ignorance of the facts. Had he known that the taxes for 1894 and subsequent, whose payment was recited in the tax collector’s certificate attached to plaintiff’s application to buy the property, had been kept down through payments made to the very last by the party whose title the state was about to aid in setting aside, we cannot conceive that he would have made the transfer. He certainly would not have done so without giving defendant a hearing. Act No. 126, p. 181, of 1896. The plaintiff, in altering records and in making use of defendant’s own payments for 1894 and later years to further his own interests in divesting him of his property and acquiring it himself, was guilty of a fraud, and he cannot be permitted to invoke in his own behalf any rights which the state itself, or any one holding under her in good faith, might have set up. Code of Practice, art. 19. Should the state itself have become owner of this property by the adjudi-' cation to it in 1894, it could have done so only by adopting and ratifying and making its own the illegal and unconstitutional acts of its officials for the purpose, of the acquisition of the property of its citizens. Whether it could or should have done so might have been, under different circumstances, a question which would have met us at the threshold, before reaching the point of ascertaining whether, assuming the state to have been legally the owner of certain property, its ministerial officers could by any act of theirs divest it of its own. Counsel of defendant refer the court to the views of this court expressed in Breaux v. Negrotto, 43 La. Ann. 435, 9 South. 502; State v. Ober, 34 La. Ann. 359; Gulf Co. v. Wade, 51 La. Ann. 251, 25 South. 105; State et al. v. N. O. City & Lake Railroad, 104 La. 693, 29 South. 312; State v. Taylor, 28 La. Ann. 460; Davis v. Gray, 16 Wall. 203, 21 L. Ed. 447; U. S. v. Budd (C. C.) 43 Fed. 680; Martin v. Barbour, 140 U. S. 634-646, 11 Sup. Ct. 944, 35 L. Ed. 546.
We do not think the exigences of this case require us to go back and inquire what the state could or should have done. We stop short in this matter at plaintiff and his pretensions. It is a well-recognized rule that a party must come before the court with clean *180 hands, or he will not be listened to. In Austin v. Citizens’ Bank, 30 La. Ann. 691, Chief Justice Manning used this language, as the organ of the court:
“Every country which relies upon legally imposed taxes, instead of forced loans and arbitrary exactions, for its maintenance and sustenance, recognizes and enforces the duty of the owner of property which is protected to assist in the support of the government that protects it. But no government will permit its machinery constructed to enforce the payment of public dues to be used to manipulate a fraud, and, .if the purchaser is a party to the fraud, he must share its consequences.” We are not prepared to say that the act of an ’ official, even though a deputy sheriff, in purchasing property offered by the state at public auction in enforcement of payment of state taxes, was, before the passage of Act No. 94, p. 149, of 1902, an absolute nullity, nor that in purchasing property at such sale he would have bought a “litigious right.” Railroad Co. v. Kelly, Bernsteain & Co., 52 La. Ann. 1741, 28 South. 212. The lawmaker invites purchasers to tax sales, while it seeks to repress the sales of litigious rights. Should, however, a person connected with the tax collector’s or assessor’s office make use of the opportunities which such a situation would afford him to obtain advantages which work in his own favor and to the injury of others, he must not expect to obtain the assistance of courts in working out his purposes. We think, in view of the situation disclosed in this record, that the passage of Act No. 94, p. 149, of 1902, prohibiting in the future any sheriff, tax collector, or their deputies, or any other officer, state, municipal, or parochial, whose duties are to assess or collect taxes, from buying, either directly or indirectly, any property sold or offered for sale for taxes, and making any sale to such officer null and void, is a salutary one.
Plaintiff urges that the prescription which he invokes is one guarantied by constitutional provisions. That may be true, but this is one of those cases where the benefit of a constitutional provision cannot be invoked by a particular person, because he has precluded himself from doing so by reason of his own conduct. See the converse of this proposition announced in Louisiana Society for the Prevention of Cruelty to Children v. Moody, 52 La. Ann. 1815, 28 South. 224.
We think the judgment appealed from is-correct, and it is hereby affirmed.
BLANCHARD, BREAUX, MONROE, and PROVO STY, JJ., concur in the decree.